Edgar J. Nathan, Jr., J.
Petitioner, the low bidder on a public letting of a contract to furnish fire pumpers to the city, brings this proceeding pursuant to article 78 of the Civil Practice Act, to set aside a determination of a Board of Responsibility and the Commissioner of Purchase finding petitioner not a responsible bidder and refusing to award the contract to it.
On or about October 16, 1956, sealed bids for a contract for 44 fire engines, known as 750 gallon pumpers with boosters and panel trucks, were opened by representatives of the city. Petitioner’s bid of $724,656.94 was found to be the lowest. The next lowest bid was that of respondent Mack Trucks, Inc., in the sum of $730,642.
On or about November 2, the Commissioner of Purchase (the head of the agency making the award) convened a Board of Responsibility to investigate and pass upon the responsibility of petitioner. Hearings were held and evidence taken on November 8 and 9, in which petitioner participated. Such hearings were apparently closed, but on written request of the Fire Commissioner, they were reopened and further hearings were held and evidence taken from November 21 through December 21, petitioner again participating.
On January 31, 1957 the Board of Responsibility comprising the Commissioner of Purchase and authorized representatives of the Comptroller and the Corporation Counsel, filed its report. *741 The board found: 1. that by reason of past performance on other contracts, petitioner cannot reasonably be expected satisfactorily to fulfill the requirements of the fire department under the contract to be awarded; 2. that petitioner is not a responsible bidder with respect to its bid upon such contract; and 3. that in view of such lack of responsibility, such contract is not to be awarded to petitioner by the Commissioner of Purchase. A copy of this report was delivered to petitioner.
Thereafter petitioner commenced this proceeding against the city, the members of the Board of Responsibility, the Fire Commissioner, the Commissioner of Purchase, and the second low bidder. Its petition alleges in substance that the determination of the board and the Commissioner of Purchase was invalid, contrary to law, arbitrary, capricious, prejudiced and an abuse of discretion, upon the following grounds: the board’s findings were conclusory and the report fails to reveal the basis therefor; the determinations are unsupported by the evidence; the board misconstrued and misapplied the charter provisions relative to lowest responsible bidders; a determination of non-responsibility by reason of equipment delivered pursuant to specifications of past contracts is unauthorized; the delegation of authority to the board is not authorized by the charter and is further unlawful for failure to provide standards for determination; the findings as to faulty performance on past contracts are not sustained by any evidence of performance of equipment manufactured by others; and the determinations unlawfully permit the exercise of favoritism in awarding contracts.
The respondents other than the second low bidder have served an answer, denying the material allegations of the petition and setting forth affirmatively numerous allegations of fact and law negativing petitioner’s claims. In addition, such respondents raise the following objections in point of law: the petition is insufficient in law; petitioner has no legal capacity; the proceeding is premature because the Commissioner of Purchase has not formally rejected petitioner’s bid; the determination being discretionary and there being no clear violation of law nor any fraud or collusion, it is not reviewable.
City contracts for purchases in excess of $2,500 are governed by section 343 of the City Charter, which provides for public letting founded on sealed bids under such regulations as shall be made by the Board of Estimate. Sudivision b of section 343 provides: “ b. The agency letting the contract may reject all bids if it shall deem it for the interest of the city so to do; if not, it shall, without other consent or approval, award the *742 contract to the lowest responsible bidder, unless the board of estimate by a three-fourths vote shall determine that it is for the public interest that a bid other than that of the lowest responsible bidder shall be accepted. Tie bids are to be decided by the agency letting the contract and the award made. Whenever a contract is awarded to another than the lowest bidder, except by action of the board of estimate, the agency awarding the same shall file in its office and in the offices of the comptroller and the treasurer a statement in detail of the reasons therefor.”
Section 5 of a resolution of the Board of Estimate, adopted June 30, 1949 pursuant to such charter authority to promulgate regulations, provides:
“ § 5. Responsibility of bidders; statements of qualification.
“ (a) Any agency may require any bidder or prospective bidder to file with it a statement, on forms to be furnished by such agency, sworn to by the bidder, setting forth the financial condition, present plant and equipment, working organization, and prior experience and performance record of the bidder and such other pertinent information. as such agency may deem reasonably necessary to determine the qualifications of the bidder. Such statement shall be filed on or before a day and hour to be designated by the head of the agency and shall be for the use and information solely of the City.
“ (b) When the person who is the lowest bidder is disqualified, or has failed or refused to file such statement when so required, the head of the agency may reject the bid.
“(c) A bidder shall be declared disqualified because not responsible only upon the determination of a Board to consist. of the Comptroller, the Corporation Counsel and the head of the agency making the award, or their authorized representatives. Such Board shall meet upon the call of the head of the agency making the award. The Board shall investigate and pass upon the responsibility of the bidder. The records and facilities of all agencies shall be available for the use of the Board. The findings of the Board shall be filed by the head of the agency making the award with the Comptroller and the Treasurer."
Preliminarily, it should be observed that since the foregoing provisions do not expressly require a hearing, transfer to the Appellate Division is not indicated (Matter of Doherty v. McElligott, 258 App. Div. 257). For the same reason, consideration of the merits of the proceeding does not .involve the questions stipulated in subdivisions 6 and 7 of section 1296 of *743 the Civil Practice Act as to whether there was any competent proof of the necessary facts, or whether there was such a preponderance of proof against the existence of any of those facts that the findings be set aside as against the weight of the evidence. Consequently, even though petitioner raises questions as to the weight and sufficiency of the evidence, the proceeding is considered in the light of subdivisions 4 and 5 on the questions of whether respondents have pursued their authority in the mode required by law, and whether, in making the' determination, any rule of law affecting the rights of the parties thereto has been violated to the prejudice of the petitioner.
First, respondents’ objections in point of law are not well taken. The petition is clearly sufficient on its face, and no facts have been shown to indicate that the petitioner, the party aggrieved by the determination, lacks capacity. The objection that the determination is not final because the Commissioner of Purchase has not formally rejected petitioner’s bid is a hyper-technical one bordering on the specious. The report not only declares the nonresponsibility of petitioner, but states in conclusion : “ In view of the lack of responsibility of Ward La France Truck Corporation the said contract is not to be awarded to it by the Commissioner of Purchase ”. That statement is signed by the Commissioner of Purchase. Nothing further should be required, but if there be any lingering doubt as to the respondents adopting and acting upon the report, Item No. 317 on the Board of Estimate calendar of February 14, 1957 is a request for amendment of resolutions previously adopted so as to provide additional funds for the purchase of the 44 fire pumpers in question and the award of the contract to the second low bidder. Since the submission of this application, it has come to the court’s attention that the Board of Estimate has appropriated the additional funds so requested. Remaining objections in point of law are conclusions in the negative of the issues to be determined in this proceeding.
Several of the grounds urged by petitioner for annulling the determination are similarly without merit. The report adequately states the findings upon which it was based. Whether such findings are sustained by the evidence is not before us for the reasons above stated. There is nothing to indicate any misconstruction of the charter provisions as to lowest responsible bidders. The Board of Responsibility is properly constituted by section 343 of the charter and section 5 of the Board of Estimate Resolution, and its authority has been judicially recognized (Epstein Co. v. City of New York 100 N. Y. S. 2d *744 326). The provisions of subdivision (a) of section 5 of the resolution set up adequate guides for the determination of responsibility and specifically authorize consideration of prior experience and performance record of the bidder.
Thus the real issues for determination are whether the refusal of the board to take evidence of comparable performance of equipment purchased by the city from other manufacturers, and the manner of conducting the hearings constituted a failure to pursue their authority in the mode required by law or a violation of law affecting the rights of petitioner to its prejudice.
Although the hearings were not conducted pursuant to statutory direction, the Board of Responsibility is given the sole authority not only to investigate, but to “ pass upon ” the responsibility of the bidder. Thus its function is quasi-judicial, rather than merely administrative. Accordingly, though its hearings may be informal and technical rules of evidence and procedure may be disregarded, no essential element of a fair trial can be dispensed with unless waived (Matter of Hecht v. Monaghan, 307 N. Y. 461). The basic issues are considered, therefore, in the light of whether the hearings in question provided the requisite elements of a fair trial.
The finding of faulty or defective past performance by the petitioner was based almost entirely upon evidence that previous trucks or pumpers furnished to the fire department by petitioner had met all specifications and had passed all tests, but had required an assertedly inordinate amount of repairs resulting in what was described to be excessive laid-up time of the vehicles in question. It was established that on 143 vehicles previously furnished there had been an aggregate of 467 repairs in seven major categories over a period of several years. It appears that there were additional repairs not included in those categories. Petitioner sought to inquire whether the performance record of similar equipment furnished by others was any better or worse, but the Fire Commissioner refused to make such evidence available. Thus the determination was made upon an absolute quantitative basis without reference to any standards, whether of comparability or otherwise. While it appears that petitioner’s past performance fell far short of reaching perfection, a fair trial would seem to require that it be given the opportunity to demonstrate that such performance was reasonably good when judged by practical standards.
As to the conduct of the hearings, the report recites that ordinary procedure was departed from because the fire depart *745 ment had full knowledge of the alleged defects and accordingly the Fire Commissioner was permitted by the board ‘ ‘ to present the facts in any manner he saw fit to do so.” Against the background of the Fire Commissioner himself prosecuting the case before a three-man board, two of whom were junior to him in rank (the Comptroller and Corporation counsel each sitting by deputy), and interrogating his own subordinates, a fair and impartial hearing is difficult to achieve. A reading of the record discloses numerous statements by the Fire Commissioner which were neither evidence nor proper argument, but which could be construed as exercising an undue dominance over the proceedings and as assuming some of the prerogatives of the board. In this connection, it should be noted that the board’s determination contains the curious statement that “ In reaching this conclusion we are mindful of the statement of the Fire Commissioner: ‘ 144 fire engines (from Ward La France) I couldn’t buy, I would be happy to buy 5 or 6 to keep you (Ward La France) in competition ’.” Furthermore, as far as the record discloses, the witnesses were not sworn, an omission of a specific element of a fair trial prescribed in Matter of Hecht v. Monaghan (supra).
Although the city certainly should not be compelled to buy from an unsatisfactory supplier, public letting of contracts necessarily imposes limitations upon free choice. The charter provides methods for awarding contracts to other than the low bidder (at least one of such methods — by three-fourths’ vote of the Board of Estimate — being open to the city on this contract), but the procedures so prescribed must be pursued according to law. Upon the facts here presented, the determination of petitioner’s nonresponsibility and the refusal to award it the contract appear to have been the result of hearings at which the essential elements of a fair trial were not observed. It appears that respondents have not pursued their authority in the mode required by law and that fundamental rules of law have been violated to the prejudice of petitioner.
Under the circumstances the court will not direct the awarding of the contract to petitioner, but will remand the matter to the Commissioner of Purchase with directions to reconvene the Board of Responsibility and to reconsider the determination after holding further hearings consistent with the foregoing, unless either all bids are rejected, or an order or determination is made by a three-fourths’ vote of the Board of Estimate pursuant to section 343 of the charter. Petitioner’s application for a temporary restraining order is granted to the extent that *746 pending such reconsideration and determination, or such rejection or order or determination of the Board of Estimate, the Commissioner of Purchase is stayed from awarding the contract on the bids involved in this proceeding to anyone other than petitioner.
Settle order on one day’s notice.