Richard Aronson, J.
This proceeding was commenced by an order obtained by the petitioner which directed the respondent, City of Syracuse, to show cause why a preliminary injunction should not be granted pursuant to CPLR 6301 enjoining the respondent, its agents, servants or employees or anyone acting under contract with it, until the determination of this motion, from demolishing, tearing down, wrecking or destroying a building owned by the petitioner herein which is a two-family residence and is known as 549-551 Delaware Street, Syracuse, New York. The preamble to the order recites: “ It appearing that a cause of action for an injunction exists under Civil Practice Law and Rules, Section 6301, and that a proceeding under Article 78 of the Civil Practice Law and Rules is available as specified in the attached affidavits ’ \ The petition upon which the order to show cause was granted prays for the issuance of a temporary restraining order and, further, that thereafter an injunction pendente lite issue restraining any *720 demolition of the premises which are the subject of this litigation until such time as the court reviews the determination of the Bureau of Buildings as specified and provided in article 78 of the CPLR.
No summons and complaint have been served in an action for an injunction. Although the papers are rather loosely drawn, to say the least, it is apparent that what the petitioner seeks by this proceeding is a review of an order issued by the Superintendent of Building of the respondent city directing the demolition of the building owned by the petitioner and, therefore, the court will consider the application as one made pursuant to CPLR 7801 since it has jurisdiction of the necessary parties and CPLR 103 (subd. [c]) guarantees that no action, special proceeding or other ‘ ‘ civil judicial proceeding ” shall be dismissed solely because it is cast in the wrong form. If jurisdiction attached, the court has broad discretion to make whatever order is required to convert the action to its proper form.
The Housing Code of the City of Syracuse (Chapter 27 of the Revised General Ordinances of the City of Syracuse, eff. June 1, 1963) sets forth the procedure for correcting and removing violations of the Housing Code. The Bureau of Code Enforcement and Licensing of the Department of Engineering of the City of Syracuse is designated as the agency to administer and secure compliance with the code (H. C. 27-111 [a]), under the direction and charge of the Superintendent of Building and Rehabilitation as chief officer. (H. C. 27-111 [b].)
One of the petitioner’s contentions is that the Housing Code of the City of Syracuse is unconstitutional. This question cannot be determined in an article 78 proceeding for the reason that CPLR 7803 specifies what questions can be raised in any proceeding brought pursuant thereto, and no provision is made for the determination of the constitutionality of a statute or ordinance therein. Furthermore, it has been held that the proper way to raise the question of constitutionality of a statute or an ordinance is by way of a separate action or proceeding. (Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N Y 2d 508.)
The final order to demolish issued by the Superintendent of Building is subject to review by the courts pursuant to H. C. 27-134 which provides that any person aggrieved by a final order of the chief officer of the agency may seek to have such order reviewed by the Supreme Court in the manner prescribed by article 78 of the Civil Practice Act (now CPLR).
*721 It appears from the affidavit of the respondent that prior to the service upon petitioner of the final order to demolish issued pursuant to H. C. 27-128, several inspections of the premises had been made between April 14, 1964 and May 26, 1964, at the direction of the Superintendent of Building and Rehabilitation which, in his opinion, revealed certain violations of the Housing Code, and the petitioner was notified thereof; that the violations continued, and thereafter, because of the petitioner’s failure to comply with the code and correct the violations, a summons was issued by the City Court of the City of Syracuse to the petitioner directing him to appear before the Criminal Division of that court on July 14, 1964, to answer a complaint made against him by the Superintendent of Building, charging him with 19 specific alleged violations of the Housing Code which were set forth in an affidavit attached to the summons.
Pursuant to the summons a trial was held on October 9 and October 13, 1964, as a result of which the petitioner was found guilty of three violations, namely:
(1) 27-22B East and west front stairs lacked exterior handrails, front stairs to attic were tilted and had rotted support columns, stairs in attic to roof had broken treads and unapproved thickness of materials.
(2) 27-22-D Paint building, weather permitting.
(3) ' 27-23-E Bathroom floor sagged — 1st floor, also in kitchen.
Petitioner was fined $150 and the court in its decision recommended and requested that the proper city officials make the necessary arrangements to have this house condemned, and ordered the Welfare Department to vacate these apartments as soon as possible.
It further appears that on December 9, 1964, the Superintendent of Building pursuant to H. C. 27-127 served a notice of intent to demolish based upon the decision of the court and also upon a report made on November 9, 1964 by an Inspector of the Bureau of Buildings which indicated that the building was vacant and that numerous additional violations were found to exist on the premises. The officer who made the inspection placed “Unfit for Occupancy” placards on the front and rear of the building in accordance with H. C. 27-121. He also reported that on November 16, 1964, upon further inspection of the premises he found no change or improvements made relative to the violations found at the time of the previous inspections and as hereinabove stated, he found additional violations which he reported and which are *722 listed in Ms affidavit submitted by the respondent in opposition to the motion.
On December 15, 1964, petitioner visited the office of the Superintendent of Building and orally applied for a permit to remodel the premises into four apartments and he was advised to put his proposal in writing. On December 21, 1964, petitioner by letter requested a permit to remodel into four apartments but submitted no details of what he planned to do to accomplish this. On December 28, 1964, the Superintendent of Building advised the petitioner by letter that the request did not contain the information needed for a proper determination of the application and set forth exactly what information would be required. On January 4, 1965, the petitioner advised the Superintendent by letter that he was abandoning his remodeling plans, and indicated that he wanted to repair the property so that it was in complete compliance. On January 13, 1965, the Superintendent of Building advised the petitioner that it was necessary for him to submit with his application for a permit to repair, plans and specifications and that all violations, including those referred to as corrected, partially corrected or still in effect, should be made a part of his over-all rehabilitation plans. On March 1, 1965, the final order to demolish pursuant to H. C. 27-128 was served upon the petitioner.
Because of the failure of the petitioner to take the necessary steps to have the building demolished, the Superintendent of Building advertised for bids which were duly opened on March 22, 1965, on the same day that petitioner obtained the order hereinabove referred to, restraining the city from demolishing or wrecking the building pending the hearing and determination of this proceeding.
Turning now to the question of whether the determination of the Superintendent of Building to demolish the premises of the petitioner was made in violation of lawful procedure, was affected by an error of law, was arbitrary and capricious, or was an abuse of discretion as to the measure or mode of penalty or discipline imposed, as claimed by the petitioner, we must look to the provisions of the Housing Code itself; particularly since in this case the official action taken by the Superintendent of Building is confiscatory in nature, and in essence involves the taking of and interference with property rights of the petitioner.
As hereinabove set forth, the petitioner was found guilty of three violations of the Buiding Code upon trial and was fined by the court. These violations have never been cor *723 reeted. Subsequently further inspections revealed additional alleged violations. A notice of intent to demolish as provided in H. C. 27-127 was sent to the petitioner and stated that according to the court’s decision the property remained in violation of certain sections of the Housing Code, specifying those of which the petitioner was found guilty and that in addition, a recent inspection report indicated that the property was also in violation of H. C. 27-126 in that the dwelling had been declared unfit for occupancy and vacated by a court order and was not being maintained acceptably secure against lawful entry for the protection of the public, and that upon those grounds the city would order the building demolished unless a private program of acceptable rehabilitation or demolition was forthcoming from the owner within 10 days. The petitioner, as hereinabove pointed out, thereafter communicated with the Superintendent of Building but no steps were taken to comply with the notice of intent to demolish.
It is interesting to note that the letterhead of the Janks Co., Inc., with which the petitioner is apparently connected, lists, as two of the services that it offers to the public, “Building Restoration ” and “ Commercial and Industrial Painting ”, yet the petitioner for a period of about two and one-half years has ignored the requests and orders of the Bureau of Buildings, as a result of which his property has been permitted to steadily deteriorate to the point where, according to the photographs submitted by the respondent, it has become unfit for occupancy, dilapidated, an eyesore, and also a menace to the public safety. It is evident that it has not properly been made secure by the owner in violation of the Housing Code, and in addition thereto, it allegedly violates other sections thereof according to the affidavit of Lt. Joseph A. Waskiewicz, an Inspector attached to the Bureau of Buildings, in which he sets forth the conditions he found existing on November 9, 1964, about a month after the trial.
While it is difficult to reconcile the cases that draw the distinction between official action characterized as “ administrative ” and that classified as “judicial” or “quasi-judicial”, there can be little doubt in this case that the nature of the official action taken by the Superintendent of Building can be classified as “judicial” or “ quasi-judicial ” rather than “administrative ” since it unquestionably involves the taking of or interference with a property right of the petitioner. Therefore, a formal adversary-type hearing should have preceded the action and only facts supported by substantial evidence introduced at that hearing should be relied on in sustaining the action (8 *724 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.11), particularly since the code itself provides for a hearing upon notice preceding any action which the Superintendent of Building might take in enforcing the provisions of the Housing Code.
Pursuant to the direction contained in the decision of the City Court, the tenants in petitioner’s building vacated it, although it does not appear at whose instance or direction this was accomplished. Thereafter the Superintendent of Building determined that the building was unfit for human occupancy, and on December 9, 1964, so advised the petitioner in the notice of intent to demolish served upon him. That notice contained no statement that the petitioner was entitled to a hearing.
H. C. 27-121 specifies the defects to be considered in determining whether the premises within the scope of the code may be designated as unfit for human occupancy and then H. C. 27-122 provides:
NOTICE OP INTENT TO ORDER PREMISES VACATED
“ Whenever the chief officer of the agency determines that any premises are unfit for human habitation as provided in 27-121, he must include such finding within the notice of violation provided for in 27-116, along with a statement of his intent to order the premises vacated and to placard said premises, if compliance with the provisions of the notice of violation has not been secured.”
This section requires the chief officer to include such finding within the notice of violation provided for in H. C. 27-116. No such notice was given to the petitioner so that he has never had an opportunity to answer or refute the charges which undoubtedly led to the issuance of both the notice of intent to demolish and the final order to demolish. It is evident here that the only hearing which was granted to the petitioner on any of the alleged violations was the trial held in the City Court where is was determined that the attic stairs were not in conformity with the Housing Code; that the exterior of the building needed painting and that some of the floors, walls and ceilings were not structurally sound. It is evident from the statement in the notice of intent to demolish that such decision was based npon many violations in addition to those found in City Court, and the court is of the opinion that the Housing Code explicitly mandated the chief officer to give the notice provided for therein to the property owner, and this he neglected to do.
Despite the existence of numerous violations of the Housing Code which were alleged to exist on the premises in question in *725 the opinion of the Superintendent of Building, never during all of the proceedings taken by him in attempting to enforce the code was the petitioner granted a hearing on any of them before the official designated in the code, nor does the record show that the petitioner was ever notified that he was entitled to one. The only hearing accorded the petitioner was the trial in City Court upon which he was found guilty of three violations of the Housing Code which, as far as the court can determine, have never been corrected. No appeal was taken from that decision so that he cannot be heard to say that he was denied a hearing on those violations. However, the existence of these three violations alone could not justify or warrant a determination by the Superintendent of Building that the building should be demolished nor does the trial in the City Court obviate the requirement of the code that a hearing on notice, specifying the alleged defects, be held before the Superintendent of Building or his designated agent as provided in H. C. 27-116.
The code, in compliance with the requirements of due process of law, properly provides adequate safeguards of notice which afford the property owner the right and opportunity to request a hearing on any alleged violations within 10 days after receipt of notice thereof. (H. C. 27-116.) This section is referred to in both H. C. 27-122, which relates to the notice of intent to order premises vacated, and H. C. 27-127, which provides for the notice of intent to demolish. These sections require that, if a hearing is requested by the property owner, it shall be held before the chief officer or his designated assistant. It appears from the affidavit of Lt. Waskiewicz that after an inspection of the premises subsequent to the trial in City Court that the premises were in a deplorable condition and were in violation not only of those sections of the code of which petitioner had been found guilty but also of many other sections thereof. The court believes that had the petitioner been duly notified thereof in accordance with the Housing Code, he would unquestionably have been hard put, even upon a hearing, to prove that those violations did not exist. Be that as it may, the fact still remains that we are dealing with a decision of an administrative officer which affects a valuable property right of the petitioner, and he was accordingly entitled to the procedural protections afforded by the code. Because he failed to comply with code requirements, the enforcement officer has exceeded his authority since his determination to demolish the building was made in violation of lawful procedure. The final order to demolish which the petitioner seeks to set aside represents, under the facts here presented, an unwarranted and illegal exercise of authority. If *726 the order were executed, it would result in the petitioner being deprived of his property without due process of law which requires that in all proceedings of a judicial nature which may result in a deprivation of liberty or property, the person proceeded against shall be entitled to notice and an opportunity to be heard. (N. Y. Const., art. I, § 6; Matter of Hecht v. Monaghan, 307 N. Y. 461.)
For the foregoing reasons, the court is constrained to find that the present determination of the ¡Superintendent of Building that the premises be demolished should be set aside and annulled, without costs, and the matter remanded to the respondent which is directed to proceed forthwith against the petitionei in accordance with the provisions of the Housing Code.
In the interim, the petitioner shall, within five days after the granting of the order to be entered hereon, comply with H. C. 27-126, and pending further proceedings in accordance herewith, make the premises safe and secure for the protection of the public by either boarding up all windows and doors in which the glass is broken or by replacing the glass where necessary.