James J. Crisona, J.
Petitioners apply ‘1 for a review, pursuant to Article 78 of the Civil Practice Law and Rules, of the determination of the respondent herein; and upon such review for the award of a judgment annulling, vacating and setting aside the said determinations of the respondent, and directing said respondent to approve the applications of the petitioners heretofore made to the respondent.”
Petitioner Caputo applied to respondent for an indorsement to an existing license to sell alcoholic beverages, reflecting his purchase of his partner’s interest in a catering establishment *231 known as the Queens Terrace. The corporate petitioner sought respondent’s permission to transfer the license, as so indorsed, to it. The respondent disapproved both applications, the corporate application after a hearing held pursuant to subdivision 3 of section 54 and subdivision 3 of section 64 of the Alcoholic Beverage Control Law.
The facts here are not at issue. What is at issue are the conclusions drawn by respondent from these facts. Caputo, needing funds with which to purchase his partner’s interest, borrowed $70,400 from a long time friend, Francine Dempsey. Caputo and Mrs. Dempsey met while they were employed in clerical capacities by the F & M Schaefer Brewing Company (hereinafter: Schaefer). The sources of the Dempsey funds were as follows: — $15,000 from accounts maintained by Mrs. Dempsey and her husband, Thomas, in the Employees’ Credit Union at Schaefer. Thomas Dempsey has been employed as a cashier by Schaefer for more than 15 years — $21,000 withdrawn by the Dempseys from savings accounts — $24,000 given to Mrs. Dempsey by her father, Thomas Messina. He obtained these funds by selling a house and filed a Federal Gift Tax return to reflect the gift. Mr. Messina was employed as a route driver by Schaefer from 1943-1960 — $10,400 loaned to Mrs. Dempsey by her brother, Gerald Messina, who is presently employed as a route driver by Schaefer. Mrs. Dempsey and her father are now employed at the Queens Terrace and her brother has worked there part-time.
In April, 1966, petitioner Caputo applied to respondent for permission to transfer the license to himself. Respondent disapproved the application, citing section 101 of the Alcoholic Beverage Control Law, which provides, in substance, that it is unlawful for a manufacturer to be interested, directly or indirectly, in any premises where any alcoholic beverages is sold at retail or in any business devoted wholly or partially to the sale of alcoholic beverages at retail. The section further prohibits a manufacturer from making or causing to be made any loan to any person engaged in the sale of alcoholic beverages at retail. Respondent then stated: “ The Authority’s records establish that the F & M Schaefer Brewing Company is a licensed manufacturer in New York State. The Authority is not satisfied that the funds received from Francine Dempsey are bona fide loans. ’ ’ The respondent further found that Francine Dempsey and the members of her family whose funds were being used, were parties in interest.
Thereafter, Caputo caused the formation of the Queens Terrace Catering Corp. The corporation, Caputo, Mrs. Dempsey *232 and another employee, Savino, who loaned Capnto money (not at issue here) agreed that in return for the money loaned to Caputo, Mrs. Dempsey and Savino were to become stockholders in the corporation along with Caputo, and would surrender Caputo’s notes, but that should the respondent fail to approve the transaction, Caputo would issue new notes. The applications presently at issue were then made to the respondent.
Respondent again disapproved the application of Caputo, reasserting its earlier reasons and incorporating its earlier disapproval by reference. After a hearing, respondent also disapproved the corporate application, stating that “ the reasons for disapproval [of Caputo’s application] are applicable to the instant application and * * * the financing and parties in interest are the same ” and making its disapproval of Caputo’s application 1 ‘ a part hereof ’ ’.
At the hearing held before Deputy Commissioner Malia, respondent called no witnesses. It merely put into evidence its file, consisting of the application and supporting papers, investigation reports and the like. Petitioners called Caputo, Francine and Thomas Dempsey and Thomas and Gerald Messina as witnesses. All testified to the bona fides of the loans and gift and to the lack of any participation in or knowledge of this transaction by Schaefer. Thomas and Gerald Messina testified that neither had nor would have any interest in the corporation. Thomas Dempsey testified that the funds in the Credit Union were solely within the control of the depositor, and not in the control of the employer. All of the witnesses testified to the long-time friendship between Caputo and the Messina family. They further testified to the close relationship of the members of the Messina family and to the fact that the father had often in the past bestowed generous gifts upon his children.
None of this testimony was controverted by respondent. Respondent’s own files reflected that Caputo, as a former license holder at two earlier establishments, had an unblemished record. Nor did respondent’s files show anything derogatory about any member of the Dempsey or Messina family. Finally, petitioner Caputo pointed out by affidavit that for the first 11 months of 1966, Queens Terrace’s purchases of beer amounted to slightly in excess of $8,000, and that purchases from Schaefer amounted to a little more than $1,500 (18.2% of the total).
The first question raised by the parties is whether CPLR 7804 (subd. [g]) requires transfer of this proceeding to the Appellate Division.
Respondent’s determination was not made solely upon the evidence presented at the hearing. Respondent expressly relied *233 upon its decisions on the Caputo applications. At the conclusion of the hearing, the hearing officer stated that the Authority1 ‘ will make such other and further investigation of your application as it may deem necessary and will act on the basis of the facts then available ”.
It has been held that a hearing under subdivision 3 of section 54 of the Alcoholic Beverage Control Law, is not a ‘ ‘ quasi-judicial ” hearing of the type contemplated by the predecessor sections to CPLR 7803 (subd. 4). Matter of Rochester Colony v. Hostetter, 19 A D 2d 250.) The express reason for that decision was that the Authority was not bound by the evidence developed at the hearing but could go outside the hearing to conduct an ex parte investigation. (Cf. Matter of Moltzen v. Hostetter, 24 A D 2d 1018, affd. 18 N Y 2d 629.) Matter of Rochester Colony (supra) was also expressly followed in Matter of William H. Van Vleck, Inc. v. Klein (49 Misc 2d 240).
In Matter of Hecht v. Monaghan (307 N. Y. 461) it was held that a hearing, to be “ judicial ” or “ quasi-judicial ” in nature, must possess all the elements of a fair trial. A recent and leading text has taken the position that it is this type of hearing which is required by CPLR 7803 (subd. 4). (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.07, p. 78-41.)
Under subdivision 3 of section 54 of the Alcoholic Beverage Control Law a hearing is granted only upon request. This procedure may be contrasted with that governing the revocation or cancellation of an existing license wherein the Authority may act only after a hearing. (Alcoholic Beverage Control Law, § 119.) At the latter hearing, the right of cross-examination is expressly conferred upon the parties (Rules of State Liquor Authority, rule 2, subd. 11; 9 NYCRR 54.11) and the Hearing Commissioner is expressly required to make written findings of fact at the conclusion of the hearing (rule 2, subd. 9; 9 NYCRR 54.9). The procedure for a hearing under subdivision 3 of section 54, as set forth in rule 1 of respondent’s rules, contains no counterpart to these requirements of rule 2.
Thus, it is clear to the court that the hearing given to the corporate petitioner in this case was not “ a hearing held, at Avhich evidence Avas taken, pursuant to direction of law ” within the meaning of CPLR 7803 (subd. 4). Hence, transfer to the Appellate Division is not required.
Turning to the question of whether respondent’s determinations Avere arbitrary and capricious, i.e., without reasonable basis (Matter of Moltzen, supra, p. 1019), the court is mindful that the respondent’s determinations should be upheld if there is any reasonable basis for them. (Matter of Gambino v. *234 State Liq. Auth., 4 A D 2d 37, affd. 4 N Y 2d 997.) However, the conceded competence of the respondent to decide these issues is of no avail to it in the absence of proof to support its conclusions. (Matter of Schenley Inds. v. State Liq. Auth., 25 A D 2d 285.) The courts, having the responsibility to pass upon administrative action claimed to be arbitrary, have exercised that responsibility. (Matter of Tortora v. New York State Liq. Auth., 24 A D 2d 1019; Matter of Matty’s Rest. v. New York State Liq. Auth., 21A D 2d 818, affd. 15 N Y 2d 659.)
Respondent’s determinations must stand or fall on its implicit finding that Schaefer is either directly or indirectly interested in Queens Terrace or loaned money or caused a loan to be jnade to Caputo. For if there is no reasonable basis in the record for this finding, all that is left to respondent is its implied finding that the funds received by Caputo from Mrs. Dempsey were not bona fide loans and its express finding that members of the family will be parties in interest. The mere fact that the Authority is dissatisfied with an applicant’s explanation of the source of his funds has been held to be an arbitrary and capricious ground for disapproving an application in the absence of some evidence tending to show that such capital was not honestly and legally acquired. (Matter of Kendzie v. O’Connell, 283 App. Div. 256, 258.) In Matter of Manganaro Foods Co. v. State Liq. Auth. (286 App. Div. 114), the application of a corporation for a beer license was disapproved by respondent because it was not satisfied that the husband of the sole stockholder, who had made a loan of $16,000 to his wife, would not be a party in interest. The court held that the mere fact of the loan was not enough to warrant the finding that the husband would have an interest, and noted too that there was nothing objectionable about the husband should he wish to apply for a license.
So in this case, the testimonial and documentary evidence of the loans and gift stands uncontradicted. And, there is nothing derogatory about any of the individuals involved here in the respondent’s files. It has been held that even concealment of funds does not warrant license revocation, particularly where there is not even a hint that the undisclosed asset is tainted in origin. (Matter of Wonderful Bar v. Hostetter, 24 A D 2d 1020.)
As regards the involvement of Schaefer, the court more than agrees with the affidavit of Commissioner'Hart, submitted by respondent in support of its position, wherein he states, ‘1 the relationship of the F & M Schaefer Brewing Company and the various parties interested in the applications herein under review might on the surface appear to be innocuous with respect to *235 the operation of the premises in question. ’ ’ Moreover, there is nothing in the record of the respondent to make the relationship of Schaefer to this transaction appear to be anything but innocuous. The undisputed evidence is that Schaefer was not consulted about, apprised of or in any way involved in this transaction. The fact that Mr. Dempsey’s funds were in the Credit Union was a matter of his choice, not that of Schaefer. The money was and is Dempsey’s, not Schaefer’s. The nature of the employment of Dempsey, a cashier, and of Thomas and Gerald Messina, a retired and active truck driver, respectively, hardly appears evidentiary of a corporate plot.
As Commissioner Hart points out in his affidavit, the purpose and intent of section 101 was to prevent a manufacturer from monopolizing the business at a licensed establishment. It is therefore quite significant that Queens Terrace, which does an annual volume of business of approximately $900,000, purchased a little more than $8,000 worth of beer in the first 11 months of 1966. And of that total, purchases of Schaefer beer amounted to exactly $1,542.94. The respondent offered no evidence to contradict these figures or to show that they were in any way a typical of Queens Terrace’s normal beer purchases. The minute amount of commerce available to be monopolized at Queens Terrace makes it unreasonable to believe that Schaefer is involved here in any way, other than by coincidence.
Accordingly, the court finds that respondent’s disapproval of Caputo’s application was not mandated by section 101. It further finds that the disapproval of both applications was an arbitrary and capricious exercise of the discretion vested in respondent, in that its findings had no reasonable basis in fact. Therefore, the determinations of the respondent are annulled and vacated and respondent is directed to approve the applications of the petitioners.