Lester Holtzman, J.
In this article 78 proceeding, petitioner seeks an order ‘ ‘ directing that petitioner he reinstated to his license as a teacher of common branches as of August 31, 1971, together with salary from that date, and further ordering that respondent Scribner be made to re-assign petitioner to a position as teacher of common branches, or in the alternative, directing respondents to grant petitioner a full and formal hearing as to the termination of his license ’ ’. Respondents cross-move to dismiss the petition.
Petitioner alleges that he was licensed as a regular teacher of common branch subjects and that on September 9, 1970 he was appointed as a teacher of common branches. His status was probationary. Petitioner further alleges that on or about April 30, 1971 he received a letter from the Executive Director of the Office of Personnel of the New York City Board of Education which informed him that the Community Superintendent for Community School Board No. 27 had recommended termination of his services. Pursuant to section 105-a of the by-laws of the Board of Education, a hearing was held by a Hearing Committee of the New York City Board of Education to determine whether petitioner’s services should be terminated. Petitioner alleges that “ at such hearing, petitioner was not permitted legal counsel, nor was he advised in advance of the hearing as to the charges to be brought against him, nor was he tried by an impartial hearing officer, nor was he permitted to cross-examine witnesses, nor was he permitted other due process safeguards ”. On or about June 14, 1971, petitioner received a letter from respondent Harvey B. Scribner [Chancellor of the City School District of the City of New York] stating that it was recommended to the Community Superintendent of Community School Board of School District No. 27 that action be taken to discontinue petitioner’s services as *240 a probationary teacher, and on or about July 16, 1971 petitioner was so terminated by the local school board.
Petitioner contends, and it is not disputed, that pursuant to the operation of section 241 of the by-laws of the Board of Education, when his services were terminated his license was also and automatically terminated. Petitioner also contends that since a license to teach constitutes a valuable property right, it may not be terminated unless the licensee is afforded a hearing that complies with “ due process ” safeguards mandated by the United States Constitution. Petitioner concludes that, since the hearing afforded him did not comply with these safeguards, his dismissal was procedurally and constitutionally defective. This court agrees for the following reasons: The question of whether a hearing held pursuant to section 105-a of the by-laws of the Board of Education affords sufficient due process to an employee whose license may be affected by the determination has been discussed in several recent cases.
In Matter of Clausen (N. Y. L. J., July 8, 1971, p. 13, col. 6), the court held that a section 105-a of the by-laws hearing was improper where the determination involved an employee’s license, because the holder’s interest was of a sufficient nature that it could not be revoked without a hearing in which the employee was afforded the right to be represented by his own counsel. In Zwillenberg v. Scribner (N. Y. L. J., Nov. 3, 1971, p. 19, col. 8), which also dealt with the revocation of a license of a probationary teacher, the court reached a different result. In Zwillenberg (supra) the court, relying in large measure on the decision of the Commissioner of Education of the State of New York in Matter of Baronat (11 Ed. Dept. Rep., Decision No. 8376, Jan. 11, 1972), held that the procedures afforded by section 105-a are sufficient to comply with minimum due process requirements. This holding was in accord with the decision in Matter of Butler v. Allen (29 A D 2d 799).
However, subsequent to the decision of Zwillenberg (supra), the Commissioner of Education of the State of New York reopened his decision in Matter of Baronat (supra) and “ determined that my prior decision must be recalled ”. (Matter of Baronat, supra.) It is necessary to discuss at length the decision in Matter of Baronat (supra) because it is crucial to the disposition of the matter at bar and because the logic and reasoning of the Commissioner are compelling. In Matter of Baronat, a probationary teacher was terminated and his license canceled. As in the present case, he was given a hearing in accordance with the provisions of section 105-a and, while he *241 did not object to the procedures that section 105-a provided with respect to the termination of the probationary appointment, he did present the following question to the Commissioner: ‘ ‘ The sole issue raised by this appeal is whether a hearing held pursuant to section 105-a of the by-laws of the City School District affords sufficient due process to justify the cancellation of a teacher’s license.”
At the outset, the Commissioner in his opinion dealt with the function of the license. He stated: “ Thus, the license has a two-fold function. While it is to some extent analogous to a certificate of eligibility for appointment to a civil service position, it further represents formal acknowledgment that the individual possesses satisfactory academic credentials for appointment to educational positions consonant with the scope of the license conferred.
“ The license must be sharply differentiated from the probationary appointment which affords a given community superintendent and board the opportunity to evaluate the ability of the teacher to perform the duties of a specific position. If an individual’s performance under such circumstances is found to be unsatisfactory, the probationary appointment may be terminated in accordance with traditional rules. However, no stigma of fault necessarily attaches to such termination, nor does, it reflect adversely upon the individual’s professional competence in the same manner as would a determination to cancel a license predicated upon the basis of ‘ incompetence, inefficiency and weakness in discipline ’.”
After discussing the significance of the license, the Commissioner held: “Section 241 of the by-laws of the City Board provides that a license shall be terminated upon the occurrence of any one of several stated contingencies. Subdivision (g) thereof provides that a license shall terminate ‘ if and when the service of the licensee is terminated by discontinuance of probationary appointment or by dismissal ’. Where this subdivision is to be employed, I specifically hold that due process requires that the individual affected be afforded a full and fair hearing composed of the elements stated in the Lowenstein decision and that a hearing pursuant to section 105-a is not sufficient. What respondent has attempted to do is to fuse together two proceedings which have traditionally had different burdens of proof and to afford the teacher the less favorable procedural safeguards afforded in conjunction with termination of probationary appointments. This not only overlooks *242 a long series of court decisions following the doctrine of Hecht v. Monaghan, 307 N. Y. 461, relating to the termination of licenses but, in addition, institutionalizes an unsound practice which may not be continued.
“It has been argued that cancellation of an individual’s license does not deprive him of his right to practice his chosen profession, since he may subsequently seek and secure employment in nonpublic schools within New York City and in both public and private schools outside of the City of New York. This approach, however, begs the basic question of the validity of the underlying procedures employed by respondent. Further, it is unrealistic to assume that a formal determination that an individual has been so incompetent or inefficient as to justify cancellation of his license will not seriously and adversely affect his employment possibilities elsewhere.
1 ‘ While the various decisions of the courts in this area cannot readily be reconciled, it is vital to note that a change in the structure of the New York City school system has occurred since the adoption of section 241 of the said by-laws.
“Prior to the enactment of the de-centralization statute and the creation of thirty-one community school districts as semi-autonomous units of the New York City school system, employment and licensure in that system were for all practical purposes synonymous. Termination of employment left the existence of such a license a hollow form, without any legal substance. Since the enactment of article 52-a of the Education Law, however, where a teacher is dismissed from employment by one of these thirty-one community districts, he may be reemployed by any of the other thirty-such districts, provided he holds a license. The license, therefore, is now a valuable property right and is entitled, as such, to the protection set forth in the decision in Hecht v. Monaghan and its progeny.”
After careful consideration of the question presented, this court concurs and adopts the rationale of the comprehensive opinion of the Commissioner of Education as set forth above.
Whether the license to teach be characterized as a privilege or a valuable “ property right ” is not, in my opinion, the controlling criterion. (See 1 Davis, Administrative Law, §§ 7.18, 7.19.) I hold that the interest of the licensee is sufficient to require that before a teaching license is revoked, the licensee be given a hearing consonant with the fundamental guarantees of due process and fair play which are provided by the United States Constitution.
*243 Accordingly, the cross motion to dismiss is denied. In accordance with the procedures set forth in CPLR 7804 (subd. [f]), respondent is permitted to serve an answer which shall be served and filed within five days after service of the order with notice of entry. The petitioner may renotice the matter for hearing upon two days’ notice.