Matter of Tyk v New York State Educ. Dept. (2003 NY Slip Op 23943)

Matter of Tyk v New York State Educ. Dept.

2003 NY Slip Op 23943 [2 Misc 3d 782]

November 24, 2003

Supreme Court, Kings County,

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

As corrected through Wednesday, April 28, 2004

[*1]
In the Matter of Aaron Tyk, Petitioner,
v
New York State Education Department, Respondent.
Supreme Court, Kings County, November 24, 2003

APPEARANCES OF COUNSEL

Aaron Tyk, petitioner pro se. Eliot Spitzer, Attorney General, New York City (Kathryn C. Spann of counsel), for respondent.

{**2 Misc 3d at 782} OPINION OF THE COURT

Lewis L. Douglass, J.
The New York State Department of Education maintains a system wherein parents who are unhappy with decisions about the placement of their handicapped children may ask that the dispute {**2 Misc 3d at 783}be resolved by an impartial hearing officer (IHO) who is assigned from a list on a rotation basis (Education Law § 4404).
The procedure for revoking an IHO's authority is contained in 8 NYCRR 200.21 (b) and generally provides that the authority may be revoked by giving the IHO a written statement of the charges and an opportunity to submit a response. That process was followed here. The Commissioner charged the IHO with using inflammatory language in decisions, not writing decisions on time, failing to grant adjournments and failing to follow the sign in security rules when he arrived at schools to conduct hearings.
This CPLR article 78 challenge to the Commissioner's decision is that the petitioner's authority should not have been revoked solely on the written record without giving the IHO an opportunity for some form of hearing to controvert the charges.
Under our system almost everyone against whom the State takes an adverse action is entitled to a hearing. People facing parking tickets get hearings (Vehicle and Traffic Law § 240); revocation of hack driver's license (Matter of Hecht v Monaghan, 307 NY 461 [1954]); revocation of pistol permit (Wrona v Donovan, 88 AD2d 998 [1982]); revocation of poultry slaughter license (Matter of Mintz Poultry v Walkley, 41 AD2d 865 [1973]); revocation of Social Security benefits (Mathews v Eldridge, 424 US 319 [1976]); reduction of benefits to welfare recipients (Goldberg v Kelly, 397 US 254 [1970]); revocation of driver's licenses (Bell v Burson, 402 US 535 [1971]); and even felons serving time in penitentiaries when they face disciplinary action get hearings (Wolff v McDonnell, 418 US 539 [1974]).
13 NY Jur 2d, Business Occupations § 79 reduces this practice to basic hornbook law when it says:
[*2]
"Where the state confers a license to engage in a profession, trade, or occupation not inherently inimical to the public welfare, such license becomes a valuable personal right which cannot be denied or abridged in any manner except after due notice and a fair and impartial hearing before an unbiased tribunal."
Every action by government does not require a hearing. The requirement of a hearing is grounded in the constitutional prohibition against taking "liberty" or "property" without due process of law. The Supreme Court has created a broad definition of "liberty" and "property" when concepts are considered in the context of state action against citizens. This analysis is best {**2 Misc 3d at 784}revealed in Board of Regents of State Colls. v Roth (408 US 564 [1972]) and then in Mathews v Eldridge (424 US 319 [1976]). In Board of Regents (supra at 570) the Court concluded that a nontenured college professor had no "liberty" or "property" interest which was offended when his contract was not renewed. Though the Court found no "liberty" or "property" interest implicated in that case, it sets forth a clear explanation of what constitutes "liberty" and "property" interests. After a long historical discussion about how those concepts have been evolved throughout our law in the context of when a person is entitled to a hearing the Court reached the conclusion that "[w]here a person's good name, reputation, honor, or integrity is at stake because of what the government is doing to him, notice and an opportunity to be heard are essential" (at 573).
In denying the college professor's application for a hearing the Court concluded that the nonrenewal of his contract did not damage his reputation and obviously the denial of disability benefits did not damage a person's reputation and thus no hearing was required. But here we are faced with a wholly different circumstance. This is not the failure to renew. This authority was "revoked." That procedure clearly impacts the petitioner's reputation and honor since the clear implication of a revocation is that the affected party did something wrong.
In the real world there is some prestige associated with being an IHO. It is an impressive title, a source of pride to his friends and family. When it is taken away, he is subjected to some public humiliation and thus the revocation of this certification falls clearly within the concepts of Board of Regents of State Colls. and it is this constitutional requirement that is the basis for all of the hearings that are regularly provided in our law and regularly recognized by the Appellate Division (Matter of Wrona v Donovan, 88 AD2d 998 [1982]; Honey Dippers Septic Tank Servs. v Landi, 198 AD2d 402 [1993]).
Respondent cites language in Board of Regents of State Colls. "This same conclusion (that Petitioner is not entitled to a hearing) applies to the discharge of a public employee whose [*3]position is terminable at the will of the employer when there is no public disclosure for the reasons for the discharge." But petitioner is not a terminable employee "at will" and the reference to public disclosure must apply to situations where licenses are not renewed or as in Board of Regents of State Colls. where tenure is not granted. Here, in support of the revocation there is a long public record of petitioner's alleged shortcomings. As petitioner {**2 Misc 3d at 785}acknowledges the Supreme Court has regularly recognized that where revocation affects the opportunity to earn a living, a hearing is required (Schware v Board of Bar Examiners, 353 US 232 [1957]; Honey Dippers Septic Tank Servs. v Landi, 198 AD2d 402 [2d Dept 1993]). Admittedly, petitioner may pursue other opportunities within the legal profession but the reality is that the existence of a record of his alleged wrongdoing when he served as a hearing officer would have a significant impact on his future employment opportunities. It is for that reason he is entitled to a hearing to challenge the accuracy of that record.
Respondent also cites Cafeteria & Rest. Workers Union v McElroy (367 US 886 [1961]), where a cook's security pass was revoked without a hearing. That case, however, confirms the basic point that where government provides some authority or some license which is more substantial than "at will" employment as was involved in that case, revocation can only take place by following various procedures which include some opportunity for the affected party to challenge the accuracy at some form at a hearing.
I do not suggest in this decision that any particular form of hearing be held, what procedures to be applied or before whom the hearing is to be held. That is the Commissioner's responsibility. But the law is clear that the petitioner is entitled to some forum where he can be heard on the validity of the charges.
This court is not unmindful in the sensitive nature of the petitioner's work, i.e., determination about the education of handicapped children. For this reason it would be inappropriate for this court to order immediate reinstatement, but in view of the clear constitutional mandate and the regularity which our appellate courts have required hearings where licenses are revoked before their expiration, there is no alternative but to find that this revocation was arbitrary and capricious and, therefore, grant the petitioner's application. Rather than ordering immediate reinstatement, I order that the Commissioner conduct a hearing within 60 days from the date of this decision or within such time as that date may be extended on application to this court and upon failure to conduct some form of hearing within 60 days or within such time when as may be extended by this court, petitioner's application is granted in full and reinstatement is ordered.