Walter ft. Hart, J.
In this article 78 proceeding petitioner Marine Park Boats, Inc. and intervening petitioner H. P. Brown, Inc. seek judgment annulling respondents’ determination affecting certain waterfront property owned by the City of New York and occupied by them under temporary permit issued by respondents.
Marine Park Boats, Inc. is in the business of selling and repairing boats and marine equipment and renting mooring and storage space. It has occupied a parcel of land situated along the shoreline of Mill Basin under annual permits since 1958 at a rental of $1,498 per annum. On April 28, 1966 it requested the respondents to grant a lease for a period of five years at an increased rental, with an option to renew for an additional five years at a 10% increase. The respondents agreed to execute such lease. However, on August 5, 1966, they advised the petitioner that the department was engaged in a thorough re-evaluation of rental policy of city-owned property in the area occupied by the petitioner and that when the study will have been completed, the petitioner would be advised of their determination. On August 23,1967, the respondents advised the petitioner that an economic feasibility study of the petitioner’s operation had been made for the purpose of establishing an equitable rental and that, accordingly, the rental terms of the occupancy permit will be based on a percentage of gross sales with a minimum rental of $2,500. Petitioner’s reckoning shows that on such basis its rent would amount to approximately $6,500 per year.
It urges that the new rental is unreasonably high and arbitrary when compared to the old rental charge, the guidelines established by the Board of Estimate’s resolution (B) of December 16, 1948 and the rental charge paid by others with larger parcels. It also claims that it is unreasonable to deny the lease since it could not operate its business properly under a temporary permit which might not be renewed. In addition, it urges that the respondents are required to allow it a rental allowance for capital improvements made by it upon the properties occupied.
H. P. Brown, Inc. (hereinafter “ Brown ”) is also in the business of selling and repairing boats and marine equipment and *940 renting mooring and storage space. It has occupied along the shoreline of Marine Basin bulkheaded property under annual permits since 1963, originally at a rental of $4,000 per annum and then at $6,118 per year. It sought a 10-year lease at such rental. On October 21, 1965 the respondents submitted a lease to Brown for signature. It was signed by Brown and thereafter submitted to the Board of Estimate for approval. While the matter had been pending with the Board of Estimate, an adjoining parcel to that of Brown became vacant. Brown sought consideration for the occupancy of this additional tract of land. The respondents advised Brown that with respect to the adjoining parcel they could not consider the rental to Brown until they had completed their current economic feasibility study. However, they further advised that, with respect to the lease of the property which Brown was occupying, they would continue to urge its adoption by the Board of Estimate. The latter body did not act on the lease and on June 24, 1966 the respondents notified Brown that its occupancy permit would not be renewed but that it would be permitted to continue occupancy under the same terms and conditions as set forth in the last permit. On November 17, 1966 Brown offered a proposal for a lease with a rental predicated on gross sales with a minimum guarantee of $9,000 per year and graduated over a period of 20 years to $12,000 per year subject to a credit for capital improvements. This was rejected by the respondents and they notified Brown that its rent was being increased on its holdover occupancy to $8,217 per annum. On August 23, 1967, Brown was notified by the respondents that, effective October 1, 1967, its rent will be based on a percentage of gross sales with a minimum guaranteed rental of $8,220 per annum.
Brown makes the same complaints as that of Marine Park Boats, Inc. and both assert that the determinations of the respondents should be annulled.
The respondents assert that they do not deem it in the public interest to grant to the petitioners leases, since the properties lie within a great portion of the lines of a street widening of Flatbush Avenue contemplated by the City Planning Commission and other agencies; furthermore, a redevelopment of the area for use as a shopping center is contemplated. Under these circumstances, the respondents contend, it is their belief that it would not be in the public interest to make long-term commitments to tenants which may interfere or be inconsistent with the redevelopment of the area. Thus, instead of a lease, they offered petitioners permits for a year with renewals based upon studies made by their real estate managers. They assert *941 that the rents charged are fair and reasonable and are comparable to rents charged to tenants of adjoining properties and that it is their general policy to put all leases and permits of waterfront property for retail sales on a gross receipts basis.
Pursuant to section 1303 of the New York City Charter (formerly § 707), the Commissioner of the Department of Marine and Aviation, subject to the approval of the Board of Estimate, may lease any wharf property belonging to the city for such terms and in such manner as may be provided by law. If the Commissioner fails to agree upon the terms of a lease, the person desiring it may submit his proposed lease to the Board of Estimate and, if the board accepts it by a two-thirds vote, the Commissioner is required promptly to execute the lease.
The respondents heretofore moved to dismiss the petitions on the ground that the petitioners have failed to exhaust their administrative remedies before the Board of Estimate. The motion was denied (N. Y. L. J., May 6, 1968, p. 18, col. 7) on the ground that under the provisions of section 1303 no administrative remedy is available where the Commissioner refuses to grant any lease as distinguished from a situation involving a disagreement between the Commissioner and one seeking a lease as to the terms of the lease. By reason of this determination, the court now passes to the questions presented by the petitions.
In its proprietary capacity, the City of New York has no less rights than any private landlord in the management of its real estate. Questions of management policy and contract expediency are left to the judgment and discretion of the city’s duly constituted agents, and, in respect to the properties in question, to the respondents herein. Whether to lease or not to lease is a matter of business judgment and the court will not substitute its conclusions for those of the respondents ‘ ‘ unless the decision under review is arbitrary and unreasonable and constitutes an abuse of discretion” (Matter of Diocese of Rochester v. Planning Bd. of Town of Brighton, 1 N. Y 2d 508, 520). This is so even though the discretion conferred is absolute (Matter of Board of Higher Educ. of City of N. Y. v. Allen, 6 N Y 2d 127). To be deemed arbitrary and capricious and to constitute an abuse of discretion, the determination must lack a rational basis.
To refuse to encumber property with a long-term lease at a rental which may not support an anticipated increase in the land value in view of the impending redevelopment of the area is a matter of business judgment with a basis of rationality to support it. And it cannot be said that it is unreasonable not to lease property which will require a great portion thereof to *942 be condemned for street widening purposes. The court is accordingly satisfied that the respondents properly exercised their discretion in refusing to lease the properties in question. The fact that adjacent property occupants have long-term leases does not alter the view of the court. In the absence of any allegation of conspiracy or design to injure the petitioners or to benefit their competitors, the fact that the respondents may have granted leases to others holding similar property is of no concern to the petitioners. Certainly the owner of land is not put to the election to lease to all or to none at all. To lease to one may, in business judgment, be practical and efficient, but to another, unfavorable and disadvantageous.
Turning to those portions of the petitions which claim that the rents demanded for the properties under annual permits are exorbitant and in excess of that allowable by the Board of Estimate, the court also finds that there is no basis for upsetting the respondents’ determination. The Commissioner of Marine and Aviation, pursuant to section 1303 of the New York City Charter, has the absolute discretion to grant temporary permits terminable at will for a period not exceeding one year, to use and occupy wharf property of the City of New York. The rentals which were previously paid by the petitioners were either below or on par with a formula of rents promulgated by the Board of Estimate in 1948. Unless the said formula restricts the amount of the rent the respondents proposed, in their discretion and performing in the public interest, they cannot be deemed to be acting in an unreasonable manner in demanding such rental as is shown to be proper by their studies of prevailing conditions in the area and the general real estate mart.
On December 16, 1948, the Board of Estimate (Calendar No. 31) adopted several resolutions. Those designated as resolutions (B) and (C) are pertinent herein. Resolution (B) provides as follows:
“ Resolved, by the Board of Estimate, that the rentals payable to the City of New York for all waterfront bulkheaded property occupied pursuant to leases authorized and approved by the Board of Estimate, shall be predicated on the following annual rates: * * *
“ 5. $24 per linear foot of bulkhead, Mill Basin, Jamaica Bay.”
“ The foregoing rates are to be applied to the rental of an area not to exceed sixty (60) feet of land under water outshore of the bulkhead and forty (40) feet of upland inshore of the bulkhead, making a total of one hundred (100) feet for each linear foot of bulkhead.
*943 “ A minimum rental per square foot of excess upland (upland greater than 40 feet) is generally to be 1/100 of the rate for the bulkhead leased.
“Adjustments at 1/100 of the bulkhead rate may be made where less than the said 40 feet of upland is available.”
Resolution (C) provides as follows: “ Resolved by the Board of Estimate that the rental for the temporary occupancy of piers and other dock property shall be based on the pier formula rates * * * except that for the temporary occupancy of not
more than 60 days duration, the Commission of Marine and Aviation may fix the rental that in his judgment seems reasonable and proper in the interest of the City of New York.”
The language of the resolutions, read in the ordinary manner, does not indicate an intent to establish a maximum rent. Surely the language does not so say, but instead, it would seem, that the language establishes a minimum rent. The words in Resolution (B) “ shall be predicated on the following annual rates ” would seem to contain a plain meaning. The word “ predicated ” as used simply means “ based ”. It is the foundation of everything above and not the pinnacle of things below.
Accordingly, it cannot be deemed that the actions of the respondents in demanding the increased rentals were illegal, arbitrary or capricious. Neither did the respondents abuse their discretion or violate the law in refusing to assent to an allowance of rental for capital improvements made upon the properties by the petitioners. Resolution (F) of the resolutions adopted by the Board of Estimate on December 16, 1948 provides for an annual allowance of rent to “ a lessee [who] has paid or agrees to pay for the construction, extension or betterment, in whole or in part, of all dock structures, sheds, etc., and such payment has been officially acknowledged as a prepayment of the gross rental which the Board of Estimate has fixed.” Petitioners cannot claim the benefits of Resolution (F). The provisions plainly pertain only to a “ lessee ” which they are not. The purpose of the resolution obviously is to encourage capital improvements by long-term tenants. It does not appear that the Board of Estimate has tried to encourage such improvements by occupants under temporary permits only.
The petitioners lastly urge that the actions of the respondents constitute a taking of petitioners’ property without due process of law. To fortify this position they cite such cases as Matter of Hecht v. Monaghan (307 N. Y. 461); Duplex Co. v. Deering (254 U. S. 443) and Truax v. Corrigan (257 U. S. 312), which hold that if a license or permit is a condition precedent to operate a business, then the license or permit is a property right *944 which cannot be taken without due process of law. It is contended that a renewal permit by the respondents is necessary for the petitioners to continue their businesses and, having refused to grant the permits under reasonable terms, respondents have taken petitioners’ property without the benefit of a judicial hearing.
Even if the court were to proceed upon the assumption that there has been an exorbitant rental demand tantamount to a refusal to grant a permit, the holdings in the cases cited or those of similar purport do not give strength to the contention that a property right had been taken from the respondents. A denial of a permit to the use and occupancy of the property in question is not a denial of petitioners’ right to continue in business. Petitioners may still continue their businesses at other locations. The fact that other space may not be readily available is immaterial. This was a risk which the petitioners undertook when they established their businesses on properties rented to them on a permit basis only. They must accordingly bear the consequences of the termination of the permit and the lawful refusal to issue an additional permit. The respondents owe petitioners no duty to provide them with a permanent place to carry on their businesses. The petitions are accordingly dismissed.