Johw T. Casey, J.
In this article 78 proceeding the petitioners seek to annul a determination of the respondent, the Commissioner of Education, whereby he concluded that one petitioner, Iona College (herein Iona), was ineligible for State aid available to certain private institutions of higher learning under section 6401 of the Education Law. Section 6401 authorizes the Commissioner to apportion and to pay public moneys to private institutions which satisfy the four conditions set forth in subdivision 2 thereof. Admittedly, Iona qualified insofar as incorporation by the Regents, the maintenance of degree programs, and the educational quality of the institution are concerned. The fourth condition (subd. 2, par. d), “ the institution must be eligible for state aid under the provisions of the constitution of the United States and the constitution of the state of New York ”, was the ground upon which the Commissioner determined Iona was ineligible.
The principal attack on the Commissioner’s determination is that it is arbitrary, capricious and an abuse of discretion. The claimed arbitrariness has a threefold aspect. First, the methods which the Commissioner used to obtain information so that he could make a determination of the eligiblity of an institution lacked a reasonable basis, and, therefore, his determination was arbitrary. Second, assuming the methods used were reasonable, the determination based thereon was arbitrary because it was not supported by the information supplied. Third, by granting aid to other similarly situated institutions, such as Fordham University, St. John Fisher College, and Hartwick College, the denial of aid to Iona was discriminatory, and, therefore, arbitrary.
The petitioners have raised several additional questions: (a) section 6401 of the Education Law is unconstitutional; (b) section 3 of article XI of the New York State Constitution (Blaine Amendment) is unconstitutional; (c) the Commission *331 er’s determination was in violation of lawful procedure and was affected by errors of law; (d) the Commissioner acted in excess of the jurisdiction conferred upon him by statute; (e) the Commissioner failed to perform a duty enjoined upon him by law; and (f) the Commissioner’s determination constituted a denial of equal protection of the law.
The respondent’s answer consists of general denials, affirmative defenses and objections in point of law. One of the affirmative defenses pleaded is that petitioners McGowan and McCabe, a student and teacher, respectively, at Iona, lack standing to bring this proceeding. A determination of that issue need not be made, however, since the standing of Iona is not questioned.
At the outset, it is necessary to characterize the Commissioner ’s determination as either ‘ ‘ judicial ” or “ administrative ’ ’. Such classification depends on whether the interest involved is a “property right” or a “privilege”. Generally where affirmative assistance of the State is a prerequisite to the enjoyment of the interest, the courts have tended to characterize the interest involved as a “ privilege ”. (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.12, p. 78-56.) Since here the affirmative assistance of the State is obviously necessary, the interest affected is a privilege and the determination sought to be reviewed is an administrative one. (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.12.) This proceeding, therefore, is in the nature of mandamus to review an administrative determination of the Commissioner. Having so determined, the follow- • ing legal principles apply: (a) no hearing at the administrative level need be held before the action is taken; (b) no due process objection to the administrative procedure is available; (c) the “substantial evidence” test does not apply; (d) the court is not limited to the evidence submitted by the agency, and the issues of fact relating to the propriety of the administrative action taken are generally decided de novo by the court; (e) the proceeding is necessarily heard in the first instance at Special Term. (8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.07, pp. 78-43-78-44.)
In accordance with the mandate of subdivision 5 of section 6401, the Commissioner has established a procedure to be followed by an institution applying for aid. Initially, such an institution must provide specific answers to a detailed questionnaire which is supplied by the Commissioner. The questions concern the purposes, policies and governance of the institution, and concern the faculty, student body, curricula and programs. In short, the questionnaire concerns matters which are of sig *332 nificant importance in determining whether an institution is sectarian in the legal sense. (See Horace Mann League of U. S. v. Board of Pub. Works, 242 Md. 645, cert. den. 385 U. S. 97.) Moreover, in an introductory paragraph of the questionnaire, the Commissioner invites the applying institution 1 ‘ to submit whatever information it considers relevant to the question of its constitutional eligibility for the receipt of aid ”. Furthermore, in the instant case, on July 22, 1969, the Commissioner by letter advised Iona College that on the basis of all the information then at his disposal he was compelled to reach the tentative conclusion that Iona College was ineligible for State aid. In that letter the Commissioner invited representatives of Iona College to meet with members of the Department of Education to assist them by assuring them that their information was current, complete and accurate. A meeting was held, and Iona College supplied additional information. Moreover, shortly after the meeting Iona College forwarded material from its theology department. Finally, after all this information had been submitted the Commissioner concluded that Iona College was ineligible for State aid under the relevant provisions of the New York State Constitution.[1]
In light of the above it is clear that the procedure used by the Commissioner to obtain information was reasonable and that Iona was given ample opportunity to present its case. Accordingly, the first claim of arbitrariness is untenable. (See Matter of Mouakad v. Ross, 274 App. Div. 74, app. dsmd. 298 N. Y. 922; Weinstein-Korn-Miller, CPLR Manual, p. 14-7.)
The distinction the Commissioner drew between ‘ ‘ sectarian ’ ’ and ‘ ‘ nonsectarian ’ ’ private institutions whereby aid would be denied to the former but not to the latter was reasonable. The Education Law specifically requires that the applying institu *333 tion must be eligible for State aid under the Federal and State Constitutions. (Education Law, § 6401, subd. 2, par. d.) Furthermore, the First Amendment of the United States Constitution forbids public aid to sectarian institutions inasmuch as such aid would be an unconstitutional establishment of religion. (Horace Mann League of U. S. v. Board of Pub. Works, supra; see note 16 Am. Univ. L. Rev. 116,119-121 [1966]; N. W. L. Rev. 253, 258-259, n. 62 [1967]; cf. Opinion of the Justices, 108 N. H. 268; Swart v. South Burlington Town School Dist., 122 Vt. 177, but see Gellhorn and Greenawald, Public Support and the Sectarian University, 38 Fordham L. Rev. 395, 404-405 [1970], hereinafter Gellhorn; Comment 52 Iowa L. Rev. 571, 574-576 [1966] ; Comment 51 Minn. L. Rev. 962, 966-967; Comment 41 N. Y. U. L. Rev., 983, 987-988 [1966].)
Finally, the Commissioner predicated his determination upon the ground that aid to Iona would violate section 3 of article XI of the New York Constitution. That article pertinently provides : “ Neither the state nor any subdivision thereof shall use its property or credit or any public money, or authorize or permit either to be used, directly or indirectly, in aid or maintenance * * * of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught
Clearly, this provision applies to the petitioner college. (Gellhorn, supra, p. 430.)
It is true that not every State action which might entail some ultimate benefit to parochial schools is proscribed. (Board of Educ. v. Allen, 20 N Y 2d 109, affd. 392 U. S. 236.) Herein section 6401 of the Education Law provides for direct public aid to the institution, which is constitutionally impermissible under the State Constitution if the institution be considered ‘ ‘ sectarian ’ ’ in a legal sense. (Gellhorn, supra, p. 430; cf. Board of Educ. v. Allen, supra, p. 115.)
The Commissioner’s finding of religious affiliation of the applicant cannot be said to be arbitrary, capricious, or an abuse of discretion since it does not lack a reasonable basis. The second aspect of the claim of arbitrariness is, therefore, without merit.
Under the third aspect of its claimed arbitrariness the petitioners contend that because several ‘1 church related ’ ’ institutions such as Fordham University and St. John Fisher College were given aid the denial of aid to Iona was discriminatory. There may well be valid distinctions between those institutions and Iona College which would support granting aid to the former and denying aid to Iona. On the other hand, Iona may fall *334 within the same category as the other church-related institutions that have received aid. Under such circumstances excluding Iona from aid would be discriminatory and, therefore, would be arbitrary. (Matter of Ellis v. Allen, 4 A D 2d 343.) There should be a trial of such an issue, and, inasmuch as the action sought to be reviewed is administrative, the trial should be before Special Term. (Matter of Ellis v. Allen, supra; 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.07, p. 78-43; see McKinney’s Cons. Laws of N. Y., McLaughlin Supp. Practice Commentary to CPLR 7801, p. 13 (Supp. 1970-71); cf. Matter of Blazic v. Fay, 21 AD 2d 817.)
The petitioners claim the Commissioner violated lawful procedure in reaching his determination. I have already determined the Commissioner was not acting in a judicial or quasi-judicial capacity, and thus a hearing was not necessary. (E.g., 8 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 7803.07, p. 78-43; see Matter of Hecht v. Monaghan, 307 N. Y. 461, 468-69.) Iona College was given a reasonable opportunity to supply all the information it considered relevant to the issue of its constitutional eligibility for aid.
The question concerning whether the Commissioner proceeded without or in excess of jurisdiction is usually the subject of a proceeding in the nature of prohibition. (Thornton, Practice Commentary, McKinney’s Cons. Laws of N. Y. Book 7B, CPLR 7803.) This instant proceeding is in the nature of mandamus. Furthermore, section 6401 requires the Commissioner to make several judgments concerning an institution before he can pay State aid to a private institution. One such judgment is whether the institution is eligible for State aid under the provisions of the Constitution of the United States and the Constitution of the State of New York. (Education Law, § 6401, subd. 2, par. d.) Accordingly, the petitioners’ argument that the Commissioner acted in excess of his jurisdiction when he determined that Iona College was not eligible for aid because such aid would violate the New York State Constitution is meritless.
Similarly, the papers fail to present a situation where the determination may be said to have been affected by an error of law. (For a case involving an error of law at the administrative level, see Matter of Harrington v. Tofany, 59 Misc 2d 197.)
As to the question of the constitutionality of section 6401 of the Education Law, the petitioners bear a heavy burden. Indeed, a statute is cloaked with a presumption of constitutionality and may be declared unconstitutional only if its unconstitutionality is established beyond a reasonable doubt. (Seagram & Sons v. Hostetter, 16 N Y 2d 47.) The petitioners have not submitted *335 any authority or advanced any arguments upon which this court could bottom a determination that section 6401 is unconstitutional on its face.
Petitioners contend that if Iona College is a sectarian institution and aid would be barred under both the State and Federal Constitutions, a grant of aid to nonsectarian institutions and a denial of aid to Iona College deprives it of equal protection of the laws. To constitute a denial of equal protection there must be a purposeful and systematic discrimination designed to favor one individual or class over another individual or class with no rational basis for a differentiation between them. (E.g., Matter of Posner v. Rockefeller, 31 A D 2d 352, 353, affd. without opn. 25 N Y 2d 720.) A distinction between institutions of higher education which was predicated upon whether an institution was either sectarian or nonsectarian would be a reasonable distinction. (See ibid.) Accordingly, granting aid under section 64Ó1 to a nonsectarian institution and denying aid to a sectarian institution would not constitute a violation of the guarantee of equal protection.
Finally, inasmuch as aid under section 6401 to a sectarian institution would violate both the Federal and State Constitutions, it cannot be said that in the present case section 3 of article XI of the New York State Constitution was more restrictive than the establishment clause of the Federal Constitution. Thus, the denial of aid to Iona College was not an unconstitutional abridgement of the free exercise rights contained in the Federal Constitution.
Accordingly, on the limited issue of whether the Commissioner was discriminatory and, therefore, arbitrary, in granting aid to other church-related institutions and denying aid to Iona, the petitioner is granted a trial before Special Term in accordance with the procedure outlined in Matter of Ellis v. Allen (4 A D 2d 343, supra). The time and place of the trial shall be arranged by the parties and the court.

. The Commissioner’s determination in a letter dated December 3, 1969 recited that “ On the basis of all information now at my disposal I find I must still conclude that Iona College is not eligible for state aid under the relevant provisions of the New York State Constitution. While my conclusion is based not on any single factor, but rather upon my understanding of the institution as a whole, I have noted that the institution characterizes itself as a Catholic Institution; that the catalog and other publications of the institution evidence a strong religious commitment; that members of the sponsoring religious order comprise a substantial minority of the Board of Trustees, and occupy the presidency and a number of significant administrative positions; that all students who profess the Roman Catholic Faith must complete twelve hours in courses in Theology, some of which are conceded by the College to be decidedly denominational in character; that the Student Handbook indicates that the student activity program of the College rests on a philosophy which is Christian in inspiration and that Catholic liturgical services play a significant role in student life.”