Abraham J. Gellinoee, J.
Having been found guilty after a departmental hearing of lying during an official Police Department investigation, Captain Philip J. Foran brings this article 78 proceeding. He seeks to annul the finding of guilt, and to vacate the forfeiture of 30-days ’ pay directed by respondent Commissioner.
The evidence at the departmental hearing established that in August, 1966, when petitioner was commanding officer of the police unit assigned to the New York City Department of Investigation, he met with Sergeant David Durk, one of his subordinates, and with Patrolman Frank Serpico. At that meeting Serpico informed petitioner that he had been approached by another unknown patrolman, and had been given an envelope containing approximately $300, which he was told came from one “ Jewish Max ”, a known gambler; Serpico showed the envelope to petitioner.
*487 Serpico and Durk both testified at the hearing that petitioner ■ told Serpico he had one of two choices: ‘ ‘ The first being that he could take me in to see the Commissioner and that he would drag me before a Grand Jury and by the time it was all over, they would find me face down in the river and the second choice was just to forget about the whole thing ”.
The evidence further established that at subsequent departmental investigations, petitioner had testified that the meeting with Durk and Serpico had in fact taken place, but that petitioner had “ vehemently denied ” that the conversation described by Durk and Serpico occurred. Petitioner had testified that Serpico had spoken vaguely about possibly receiving money in the future, and, when pressed for details and assistance by petitioner, Serpico had refused to co-operate in any investigation in which he would be compelled to be a complainant. The matter, according to petitioner’s testimony, had then been dropped.
Subsequently, this incident became the subject of a Grand Jury investigation, during which petitioner, Serpico and Durk testified. The Grand Jury returned no indictment.
Then, in 1971, after petitioner had testified before the Knapp Commission to the same effect as his prior testimony at the departmental investigations and before the Grand. Jury, the department launched another investigation, which culminated in the charge dated May 29, 1972, specifying that petitioner “wrongfully and falsely” denied that Serpico had informed him that he had received an envelope containing money.
In this proceeding, petitioner does not challenge the sufficiency of the evidence at the hearing to support the determination of guilt, but does dispute the determination on the grounds that the departmental charge was time-barred; that the charge constituted an unlawful attempt to circumvent the action of the Grand Jury; that the charge was not supported by the provisions of the departmental rules and procedures upon which it was based; and that the penalty imposed was excessive.
Subdivision 4 of section 75 of the Civil Service Law, the applicable limitation statute, provides: “ Notwithstanding any other provision of law, no removal or disciplinary proceeding shall be commenced more than three years after the occurrence of the alleged incompetency or misconduct complained of and described in the charges provided, however, that such limitation shall not apply where the incompetency or misconduct complained of and described in the charges would, if proved in a court of appropriate jurisdiction, constitute a crime.” PetL *488 tioner contends that since the investigation culminating in the disciplinary action was not commenced until more than three years after the 1966 incident, section 75 bars''the departmental proceedings under review.
Although the false testimony in 1971, rather than the incident in 1966, is the basis of the specification, and the proceeding was commenced within the period limited by section 75, respondents do not rely on the fact that the proceedings are within the three-year period. Instead they argue — and correctly — that since the acts complained of would, if proved, constitute the crime of perjury, the three-year period is inapplicable because of the proviso contained in séction 75.
Petitioner’s claim that the charge against him could not be “ criminal in nature ” because the Grand Jury failed to return an indictment is without merit. The issue with respect to section 75 is not whether a crime has in fact been proved, but whether the acts alleged, ‘ ‘ if proved in a court of appropriate jurisdiction'™, would constitute a crime. Here, the facts alleged, “ if proved ’’, would constitute perjury (Penal Law, § 210.15). Therefore, the disciplinary proceeding was not barred by the three-year limitation prescribed in section 75.
Petitioner argues, however, that since the Grand Jury declined to return an indictment, the proceedings instituted by respondents constitute an arbitrary and capricious attempt ‘ ‘ to overthrow the finding of a ‘ no true bill ’ averment ’’ by the Grand Jury. This contention is based on a misconception of the nature of the Grand Jury’s function, and the significance of its failure to return an indictment; “ The grand jury had its origin at a time when there raged a fierce conflict between the rights of the subject and the power of the crown. It was established to secure to the subject a right to appeal to his peers, under the immunity of secrecy and irresponsibility, before the government could bring him to trial ’’ (People v. Naughton, 38 How. Prac. 430, 437-438, italics added). The secrecy and the immunity from obligation to account for its actions remain a feature of the Grand Jury to our own day (see People v. Bishop, 65 Misc 2d 889, 890).
This court will not speculate as to what evidence was adduced before the Grand Jury, nor as to what considerations other than the evidence presented — such as mercy, or the belief that departmental discipline rather than criminal prosecution would be more appropriate —may have caused the Grand Jury not to return an indictment.
Besides, even if the Grand Jury’s failure to indict was based solely on the evidence, such failure is not equivalent to a finding *489 of innocence. “ Our whole legal concept of the Grand Jury is that it is not a hody engaged in determining the issue of defendant’s guilt or innocence ” (People v. Van Dusen, 56 Misc 2d 107,109). "Under the law applicable at the time the Grand Jury heard evidence in this matter, the Grand Jury was required, in order to find an indictment, to conclude thát the evidence presented before it, if unexplained or uncontradicted, would warrant a conviction by a trial jury (former Code Crim. Pro., § 251); and to warrant conviction, the trial jury would have to find guilt established beyond a .reasonable doubt (former Code Crim. Pro., § 389).
The failure to indict therefore means at most that the Grand Jury did not find the evidence before it sufficient to warrant a finding of guilt beyond a reasonable doubt, not that they affirmatively found that the petitioner had not committed the acts he was accused of. In a disciplinary proceeding, it is not necessary for respondent to find the accused’s guilt beyond a reasonable doubt; it is sufficient if respondent finds the specifications established by a fair preponderance of the evidence. Thus, the failure to indict does not preclude a subsequent determination of guilt in a departmental proceeding (see, Matter of Gould v. Looney, 60 Misc 2d 973, 975-976, mod. on other grounds 34 A D 2d 807).
Petitioner’s further assertion that the proceedings against him were a politically motivated attempt to circumvent the findings of the Grand Jury does not warrant the relief requested. So long as the evidence of guilt of the specification is sufficient, and the proceedings devoid of legal error, the court may not attempt to divine respondents’ .motives in proceeding against a malefactor; the motives are irrelevant.
Petitioner next alleges that the charges made against him do not constitute violations of the rules and procedures referred to in the specification. This claim is insubstantial. Paragraph 37.1 of the Department’s Bules and Procedures, which petitioner was alleged to have violated, prohibits any conduct “ prejudicial to good order, efficiency or discipline ”. The court cannot seriously consider petitioner’s claim that lying before various police and Grand Jury investigations on matters related to allegations of corruption within the Police Department was not detrimental to the good order and efficiency of the Police Department.
Finally, petitioner alleges that the penalty imposed by respondent was too severe. He relies on subdivision 3 of section 75 of the Civil Service Law, which limits th^ fine which may *490 be imposed upon an employee found guilty of charges of misconduct to $100. Petitioner was fined 30 days ’ pay, which amount is in excess of $100. However, the power of respondent to prescribe punishment is not regulated by subdivision 3 of section 75, but rather by -section 434a-14.0 of the Administrative Code of the City of New York (see, Matter of Cugell v. Monaghan, 201 Misc. 607; see, also, Matter of Eisle v. Woodin, 205 App. Div. 452, affd. 238 N. Y. 551). By virtue of that section, respondent Commissioner is authorized to “ punish the offending party by reprimand, forfeiting and withholding pay for a specified time, suspension, without pay during such suspension, or by dismissal from the force, but no more than thirty days’ salary shall be forfeited or deducted for any offense ’ ’. Accordingly, the punishment imposed was within the Commissioner’s power, and in light of the facts of this case, cannot be said to be excessive, arbitrary or capricious.
The court therefore concludes that the determination by respondents was not arbitrary or capricious, nor made in violation of law* and must be sustained. The application is denied, and the petition dismissed.