Lyman H. Smith, J.
Charged with various alleged acts of sodomy and purportedly related sexual acts endangering the morals of ¡minors, the plaintiff, a tenured civil servant and public employee of the State, employed as a child care worker at a State training school facility maintained and operated by the State Division for Youth, was suspended from his employment on August 2, 1973, without pay.
Warned on the same date that his employment would be permanently terminated (unless within 14 days he properly invoked the .arbitration procedures available to him under article 33 of an existing employment agreement previously executed by and between the Civil Service Employees’ Association, Inc. [CSEA1 *9 and the State), plaintiff promptly sought, via an action for declaratory .judgment, judicial clarification of his statutory rights vis-á-vis his contractual rights, i.e., to a hearing, to the rules and standards for such a hearing, and to a recorded decision if available, of the serious charges brought against him and to his ultimate rights to judicial review, if any.
Thus, an inevitable collision between commendable statutory policies favoring settlement of public employment labor disputes by consensual arbitration and time-honored constitutional concepts of due process and equal protection of the laws, results from the defendant State’s instant motion for summary dismissal of plaintiff’s action for a declaratory judgment.
In a nutshell, plaintiff’s public employee union (iCSEA) negotiated a collective bargaining agreement with the State, which now renders sections. 7:5 and 76 of the Civil .Service Law nugatory as applied to the plaintiff and all other public employees represented by OSEA. The agreement (dated June 20,1973) followed collective negotiations with the State in 1970-1972 .which proposed amendments to sections 75 and 76 of the Civil Service Law and met with the ultimate approval and authorization of the Legislature (L. 1972, ch. 283, ¡§1). As a result, binding arbitration is now scheduled to consider the plaintiff’s alleged misconduct while in the employment of the State. In accordance with the agreement (art. 34.2 d 1 D) judicial review of this aribitrational determination will be confined to the limited scope available under article 75 of the CPLR.
Plaintiff instituted his declaratory judgment action prior to the commencement of the arbitration hearing. He challenges, inter alia, the constitutionality of article 33 of the agreement, governing the disciplinary proceedings now contemplated. He also attacks the legislative amendment to section 76 of the Civil Service Law which authorized and permitted the statutory provisions found thereunder to be “ replaced ” by the present collective bargaining agreement (L. 1972, ch. 283, § 1).
As above indicated, the defendant State and its subdivisions (the Executive Department and the Division for Youth) now move for summary judgment, pursuant to CPLR 3212, contending that both the legislative amendment and the resultant agreement comply with all required constitutional standards. Satisfied that no substantial factual disputes have been presented and that there exists a sufficient factual basis from which it may resolve the issues here involved as a matter of law, the court concludes that summary judgment may properly be awarded, even to the extent that such judgment may be rendered *10 in favor of the nonmovant plaintiff (CPLR 3212, subd. [b]). (See Cutting Room Appliances Corp. v. Finkelstein, 33 A D 2d 674.)
A. LEGISLATIVE CHANGES-IN THE CIVIL SERVICE LAW.
A brief review of the legislative changes in sections 75 and 76 of the Civil Service Law brings into clear focus the magnitude of the impact of. the -1973 agreement upon those public employees represented by the CSEA and, especially, the plaintiff herein.
Prior to 1972, a public employee could be suspended or terminated for acts of misconduct by the decision of an administrative hearing officer from the employee’s department or agency (§ 75). The employee so penalized could appeal (§ 76) such decision to either a civil .service commission having* jurisdiction over him, whose decision on appeal would be final and not reviewable by the courts,[1] or to the courts, pursuant to article 78 of the >CPLR. The choice ¡was solely the employee’s.
In 1970, the Legislature amended section 76 (L. 1970, ch. 458, § 1) by permitting it to be “ supplemented ’■’ or “ modified ” by a subsequent agreement between the State and a duly recognized and authorized public employee collective bargaining agent (Civil Service Law, § 207). As a result, an agreement, signed and dated June 1, 1972, retroactively effective April 1, 1972, offered public employees represented by CSEA an alternative procedure for the administrative disposition of misconduct charges placed against them. The alternative procedure provided that, in lieu of the procedures set forth in section 76, a public employee could choose to have misconduct charges heard by an independent hearing officer but, to do so, he was required to waive (in writing) his statutory rights (under i§ 76) to appeal the hearing officer’s decision either to a civil service commission, or .to the courts under article 78. Then, the employee’s only access to the courts for judicial review of the decision as to gmlt Or vrmocence was limited to the provisions of CPLR 7511.[2] The decisive factor to be borne in mind is that only the employee could electively trigger this- alternative procedure and, théreby, *11 voluntarily preclude himself from the opportunity of gaining full judicial review via an article 78 proceeding.
Tn 1972, the Legislature again amended section 76 (L. 1972, eh. 283, § 1) by permitting that section of the law to be “ replaced ” by a subsequent agreement between the State and a public employee organization (such as OSEA). As a result, a new agreement, dated and signed Juhe 20, 1973, retroactively effective April 1, 1973, now governs CSEA employees. Pursuant to this latest permissive legislation, and its concomitant agreement, sections 75 and 76 have been “ replaced ” with binding arbitration for the disposition of misconduct charges against a public employee. (Agreement, art. 33 [1973].) No longer does an employee have a choice of the alternative disciplinary procedures.
• No longer may the employee électively avail himself of a full judicial review under article 78. Rather, a single arbitrator’s determination, both as to guilt or innocence and as to any penalty to be meted out, is subject only to the limited - provisions for judicial review found in CPLR 75Í1, generally applicable to consensual arbitration awards.
With the foregoing history of collective bargaining and the legislative approbation stemming therefrom in mind, the particular implemental provisions of the current CSEA-State labor agreement governing disciplinary proceedings (art. 33) now deserve a closer look.
B. THE COLLECTIVE BARGAINING AGREEMENT.
The 1973 agreement provides that, upon receiving written notice of suspension or termination (art. 33.4 a), a public employee may first avail himself of a “ grievance ” meeting with his. department or agency head to present his position on any alleged charges.
Article 33.4 f then provides, ‘[1] If the grievance is not resolved, it may be appealed to independent arbitration ”.
Article 33.4 h provides, “ The arbitrator’s decision with respect to guilt or innocence, penalty or probable cause for suspension shall be final and binding upon the parties ”. (Subject to judicial review per CPLR art. 75.)[3]
At all stages of this disciplinary procedure, the employee is entitled to be represented by counsel (art. 33,2 a), as he was under section 75 hearings.
*12 Although, during the arbitrational process, the . agreement clothes the subject employee with the presumption of innocence and casts upon the employer the burden of proof “ on all matters ” (art. 33.2 e), nevertheless, it is silent as to any standard of proof necessary to a finding of guilt. It is reasonable to conclude that the test of a fair preponderance of the evidence should be applied, since, despite a similar statutory silence, the same test governed section 75 of the Civil Service Law hearings by virtue of cogent decisional law. (See Foran v. Murphy, 73 Misc 2d 486.)
While section 75 specifically permitted an accused employee to present witnesses on his own behalf, nevertheless, article 33 of the present agreement is again silent, both as to the employee’s right to call supporting witnesses, as well as to a specific right to confront the witnesses against him.
These latter rights may be found in the agreement only if one accepts an indirect reference found in article 33.4 h to article 34, entitled “ Grievance and Arbitration ”, wherein it is provided, “ The decision or award of the arbitrator shall be final and binding consistent with the provisions of CPLB Art. 75.” (art. 34.2d 1 D; emphasis supplied.)
The existence of these rights under the present agreement is highly questionable, since article 34.2 d 1 D refers to the “ decision or award ” only and makes no reference to the conduct of the arbitration hearing.[4]
Further, it is of more than passing significance that the present agreement fails to provide for a transcript of the arbitrational hearing, although ‘ ‘ Either party wishing a transcript at a disciplinary arbitration hearing may provide for one at its own expense and shall provide a copy to the arbitrator and the other party.” (art. 33.4 m [emphasis supplied].) The agreement’s failure to require a verbatim transcript of a hearing contrasts with section 75 of the Civil Service Law, which not only mandated the- filing of a transcript of the hearing, but required that “ A copy of the transcript of the hearing shall, upon request of the officer or employee affected, be furnished to him without charge.” (Civil Service Law, § 75, subd. [3]; emphasis supplied.)
Finally, there appears to be nothing in the present agreement which requires the arbitrator to state, in writing, the basis for his decision.
*13 The decisive issue thus presented in this proceeding is whether or not the current 1973 CSEA-State labor agreement and, in particular, the disciplinary provisions therein (art. 33), are constitutionally valid and binding on the plaintiff employee.
0. STATE ACTION.
The Fourteenth Amendment of the United States Constitution specifically provides that no State may deny an individual the equal protection of its laws nor deprive him of his rights without due process of law. While the New York Constitution (ar.t. 1, §§ 6,11) does not, per se, require State action as a foundation for violations of its equal protection and due process clauses, some directive force flowing from the State is necessary before one may claim a violation of these constitutional safeguards. (Dorsey v. Stuyvesant Town Corp., 299 N. Y. 512.) This prerequisite of State action does not require, however, that the offending action be taken by the State directly. It is enough that the offending action had the co-operation, authority and approval of the State. (Evans v. Newton, 382 U. S. 296; Grossner v. Trustees of Columbia Univ., 287 F. Supp. 535.) In Burton v. Wilmington Parking Auth. (365 U. S. 715, 725) the United States Supreme Court alluded to the tenuous bond sufficient to warrant a finding of State involvement: “ The State has so far insinuated itself into a position of interdependence with Eagle [a private restaurant charged with discriminatory practices which rented space in a public authority building] that it must be recognized as a joint participant in the challenged activity, which, on that account, cannot be considered to have been sp ‘ purely private ’ as to fall without the scope of the Fourteenth Amendment ”.
Here, the labor agreement now in issue became effective qpon the Legislature’s amendment of section 76 of the Civil Service Law. The amendment (L. 1972, ch. 283, § 1) specifically permitted the procedures set forth in both section 75 and section 76 to be “ replaced ” by a subsequent collective bargaining agreement. Although the actual deprivation of any of the plaintiff’s rights may be effected by an independent arbitrator, any such taking will be in accordance with the State-authorized, approved and supported agreement. As Judge Fuld stated in his dissenting decision in Dorsey v. Stuyvesant Town Corp. (299 N. Y. 512, 542, supra), which now seems to reflect the generally accepted test of “ State action “ even the conduct of private individuals offends against the constitutional provision if it appears in an activity of public importance and if the State *14 has accorded the transaction either the panoply of its authority or the weight of its power, interest and support
D. DEPRIVATION OE SUBSTANTIAL PROPERTY RIGHTS.
While “ due process ” provokes variant views of rights and property, there is in our time general acceptance of the constant proposition that State procedures generating a deprival of the individual’s Fourteenth Amendment property rights, must be 'fundamentally fair and rational within the confines of the “ peculiar facts or circumstances ” of each case. (See Burton v. Wilmington Parking Auth., 365 U. S. 715, supra.)
There is no question here that serious and substantial property rights of the plaintiff employee are at stake. They fall well within the range of interests protected by due process. (Board of Regents v. Roth, 408 U. S. 564; Matter of Hecht v. Monaghan, 307 N. Y. 461; Matter of Sanford v. Rockefeller, 40 A D 2d 82.) The prospective loss of employment, pay, tenure and pension rights constitute deprivations of property legitimizing the plaintiff employee’s claims to the protection of the Fourteenth Amendment (see Matter of Hecht, supra).
Of equal and, perhaps, greater significance here is the potential effect upon the plaintiff of the charges now leveled against him. Such charges, involving purported felonies and misdemeanors, raise the spectre of eventual criminal prosecution and the damaging threat herein to the individual’s liberty. In any event, the plaintiff’s interest in his good name, reputation, honor and integrity is at stake. From any view, these are interests which require the traditional fair play of due process. (Board of Regents v. Roth, supra.)
E. THE" CONSTITUTIONALITY OF THE ARBITRATION HEARING.
The plaintiff employee commenced his declaratory judgment action on the eve of the contemplated arbitration hearing. He contends that by virtue of the restrictive terms 'of the disciplinary procedures provided in the current .CSEA-State employment contract (to which he is confined without choice) he will be deprived of his fundamental rights to due process and equal protection of the law.
“ What constitutes due process under any given set of circumstances must depend upon the nature cf the proceeding involved and the rights that may possibly be affected by that proceeding ”, (Madera v. Board of Educ. of City of N. Y., 386 F. 2d 778, 780.) The United States Supreme Court has found the rudimentary requirements of due process in administrative *15 hearings to include: (1) the opportunity to be heard and (2) timely and adequate notice of a hearing. (Goldberg v. Kelly, 397 U. S. 254.)
However, the Goldberg court also declared that (p. 271): “ The decision maker’s conclusion * * * must rest solely on the legal rules and on evidence adduced at the hearing. [Citations omitted.] To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for his determination and indicate the evidence he relied on ”. (Emphasis supplied; see, also, United States v. Merz, 376 U. S. 192.)
In similar vein, our State’s highest court has declared that no essential element of a fair trial may be dispensed with in an administrative disciplinary proceeding (Matter of Sowa, 23 N Y 2d 329; Matter of Eecht, 307 N. Y. 461, supra), no vital safeguard may be violated (Matter of Roge v. Valentine, 280 N. Y. 268), nor may the proceeding contain the presence of prejudicial error (People ex rel. Packwood v. Riley, 232 N. Y. 283).
The arhitrational procedure contemplated herein falls short of these marks.
There is no requirement in the present agreement that the arbitrator state, in writing, the reasons for his decision either ás to the employee’s guilt or the penalty to be prescribed. This, of course, has a direct bearing on the effectiveness of any subsequent judicial review. (See Kinsella v. Board of Educ. of Cent. School Dist. No. 7, 378 F. Supp. 54 [W.D.N.Y., Feb. 19, 1974].)
Nor is the arbitrator bound by any .rules of law. (See Matter of Weinrott [Carp], 32 N Y 2d 190; Matter of Aimcee Wholesale Corp., 21 N Y 2d 621.)
The vague and indirect reference in the agreement (art. 34.2 d 1 D) to the effect that, “ The decision or award of the arbitrator shall be final and binding consistent with the provisions of CPLR 75 ”, is woefully inadequate to insure the plaintiff employee that the procedural provisions of article 75 of the CPLR will be provided in the arbitrational hearing in this case. (Emphasis supplied.) Indeed, there.is a serious question here as to whether or not article 34 of the present agreement is applicable to the hearing, determination and disposition of the charges laid against this plaintiff. It must be borne in mind that article 34 of the agreement, entitled 11 Grievance And Arbitration”, by its own definition ordinarily concerns a “ contract grievance ”, i.e., “ a dispute concerning the interpretation, appliea *16 tion or claimed violation of a specific term or provision ” of the agreement (art. 34.1), as distinct from article 33 of the agreement entitled <! Resignation And Discipline ”, which establishes “ disciplinary procedures for incompetency and misconduct ” and makes no reference whatsoever to article 75 of the CPLB. (Emphasis supplied.)
As previously noted (B. the collective bargaining agreement, infra), the burden placed on the employee to obtain and furnish to all other parties, if he so desires, a hearing transcript, at his own expense, creates a chilling effect on the prospects for a constitutionally adequate review. Should the employee either fail to recognize the importance of obtaining such a record, or should he be unable to bear the cost thereof, the prospect of a meaningful review will be forever foreclosed.
Finally, the current agreement’s sparse directives establishing the contemplated disciplinary procedures (art. 33) say nothing concerning the qualifications or expertise required in the vital post of the hearing officer,' i.e., “ the independent arbitrator ”. (art. 33.4 g and h.) Viewing the allegations of plaintiff’s complaint as essentially true, as we must upon a motion for summary judgment,[5] there appears the disturbing possibility that the chosen arbitrator may lack the training, background and expertise essential to assure the subject employee his constitutional safeguards. Again, here is a factpr emphasizing the ultimate importance of a meaningful judicial review.
Taken together, the f oregoing review of the agreement’s shortcomings raises .serious questions, not only as to the procedural adequacy of the agreement, but also as to its practical capacity to assure the subject employee the constitutional safeguards of due process and equal protection under law to which he is entitled.[6]
E. JUDICIAL REVIEW PROCEDURES UNDER CPLB 75.
The right to appeal is clearly not an element of constitutional due process. (Reetz v. Michigan, 188 U. S. 505 [1903].) Nor does one have a constitutional right to seek judicial review from administrative determinations. (St. Joseph Stock Yards Co. *17 v. United States, 298 U. S. 38.) Simply put, due process is not synonymous with judicial process. (See Reetz v. Michigan, supra.)
However, the United States Supreme Court, while never consistently defining the acceptable dimensions of the judicial processes necessary to sustain administrative determinations, has said that there must exist that quantum of.judicial review, under the circumstances, sufficient to meet the requirements of the Constitution. (See 4 Davis, Administrative Law Treatise, § 28.18.)
In CPLR article 75 the Legislature established judicial review of consensual arbitration awards. In CPLR 7511 the Legislature limited the modification or vacatur of such awards to the arbitrator’s: (1) fraud, corruption or misconduct, (2) partiality, (3) excesses of power and (4) failure to follow the procedure set forth in article 75. “ Matters which go to the purity or integrity of the arbitrational process ” (Mount St. Mary’s Hosp. v. Catherwood, 26 N Y 2d 493, 506-507). Obviously, the judicial review of consensual arbitration awards authorized by article 75 of the CPLR is far more limited in scope than that under article 78 of the CPLR., providing for judicial review of administrative decisions.
Under the limited scope of article 75, our courts have refused to review questions of law or of fact, and have accepted as conclusive arbitrator’s decisions on their merits (see 8 Weinstein Korn-Miller, N. Y. Civ. Prac., par. 7511.07, p. 75-157), have declared that arbitrator’s are not bound by rules of law and have refused to set aside arbitration awards based on misapplications of the law (Matter of Weinrott, 32 N Y 2d 190, supra; Matter of Aimcee, 21 N Y 2d 621, supra; Matter of S & W Fine Foods, 8 A D 2d 130, affd. without opn. 7 N Y 2d 1018), errors of fact (Matter of Granite Worsted Mills, 25 N Y 2d 451), mistakes of the arbitrator (Matter of Weiner Co., 2 A D 2d 341, affd. without opn. 3 N Y 2d 806) or the discovery of new evidence (Matter of Mole, 14 A D 2d 1).
The scope of review under CPLR 7511, unlike that under CPLR article 78, does not include court authority to review whether a determination: (1) was affected by an error of law, (2) was arbitrary and capricious, (3) was an abuse of discretion as to penalty or discipline imposed, or (4) whether there was substantial evidence to support the determination. (CPLR 7803, subd. 3.)
This is not to say that the judicial review under CPLR 7511 (to which obtuse reference is made in the current labor agree *18 ment) violates the plaintiff’s constitutional rights. Nor do its provisions offend constitutional due process. But, by compelling the employee to accept the strictly limited judicial review under article 75 of the CPLR, the CSEA-State agreement (preendorsed by the Legislature, L. 1972, ch. 283, § 1) forces a Hob-son’s choice[7] upon the employee. Thereby, the agreement isolates him from statutorial rights of judicial review enjoyed by other State employees, and, effectively, denies him the equal protection of the laws.
G. HAS THE EMPLOYEE WAIVED HIS CONSTITUTIONAL AND STATUTORY RIGHTS?
The final issue to be determined is whether or not the plaintiff employee is bound by the agreement made on his behalf by the CSEA under collective agency a,nd bargaining procedures approved by law (Civil Service Law, §§ 207, 208, 210; cf. Matter of Bauch v. City of New York, 21 N Y 2d 599, cert. den. 393 U. S. 834; City of New York v. De Lury, 23 N Y 2d 175; Matter of Kraemer v. Public Employees’ Relations Bd., 28 N Y 2d 717). To put it another way, has the employee waived his constitutional and statutory rights ? The court is compelled to conclude that he ias not.
The Public Employees’ Fair Employment Act, commonly known as the Taylor Law (Civil Service Law, § 200,et seq.), was enacted in 1967 to promote 4 4 harmonious and cooperative relationships between government and its employees ” (§ 200). To foster this spirit of co-operation, public employees were granted the right to organize (§ 202) and to be represented by collective bargaining agents (§ 203). Public employers were required to recognize such public employee unions and enter into written agreements with these representative' unions in establishing the terms and conditions of public employment, including the administration of grievances arising under such agreements (§ 204). (Matter of Antonopoulou v. Beame, 32 N Y 2d 126; Board of Educ. of Union Free School Dist. No. 3 of Town of Huntington v. Associated Teachers of Huntington, 30 N Y 2d 122.)
The 1972 legislative amendment to section 76 of the Civil Service Law is an outgrowth of this policy of encouraging public employers and employees to settle their contract disputes and grievances peacefully through arbitration when collective bargaining efforts break down. That policy was deemed to be especially important in the area of public employment, inasmuch *19 as public employees had been deprived of their right to strike under the Taylor Law (Civil Service Law, § 210). Consequently, the need of an expeditious means for public employees to challenge unsatisfactory wage and working conditions when collective .bargaining negotiations failed, was of' the utmost importance. Repetitive recourse to the courts upon the advent of each dispute or grievance would be totally unworkable. Further, arbitrators with a substantial reserve of experience and expertise in such fields of wage rates, job classifications, pensions, vacations, seniority, and other related labor-management problem areas, could be called upon to resolve employer-employee conflicts rather than leave these problems to the responsibility of the judiciary.
These policy considerations, which constituted the rationale for encouraging the arbitration of contract and labor disputes in the field of public employment, hardly apply to the instant situation involving charges of misconduct which, if proven, will equate to felony crimes. Nor do the employee’s prospective and potential losses herein equate with complaints concerning wage and working conditions which are, generally, the true focus of the arbitrational processes provided for in the present collective bargaining agreement.
The subtle but crucial distinction between the terms ‘ ‘ contract grievances ” (art. 34 of the agreement) and “ disciplinary proceedings ” (art. 33 of the agreement) indicates that the makers of this agreement viewed this distinction as being of significant importance. So, too, the definition within the agreement of a “ contract grievance ” as a “dispute concerning the interpretation, application or claimed violation of a specific term or provision of .this Agreement ” (art. 34.1) hardly applies to- the disciplinary proceedings at hand, whereunder the employee faces charges of sodomy and other related crimes. ¡(Emphasis supplied.) Appropriately, the agreement treats “contract grievances” and “'disciplinary proceedings” in two entirely separate articles.
Finally, decisional references to an arbitration award as a “ contractual right ” (cf. Matter of Antonopoulou v. Beame, 32 N Y 2d 126,131,133, supra) compel the conclusion that these are not the rights which are the subject of this decision. The rights of which we now speak are constitutional rights. They stem from a document of far greater magnitude than the instant collective bargaining agreement.
Constitutional rights can, however, be waived in most situations. (Gardner v. Broderick, 392 U. S. 273; Matter of Lee v. *20 County Ct. of Erie County, 27 N Y 2d 432.) Chief Judge Breitel (then Associate Judge) writing in Mount St. Mary’s Hosp. v. Catherwood (26 N Y 2d 493, 500, supra), said: ‘‘ the essence of arbitration, as traditionally used and understood, is that it be voluntary and on consent.” He went on to add that, in situations involving voluntary arbitration, 1 ‘ the relevancy of due process limitations in their literal sense is quite eliminated.” (P. 50.5.) However, in the same decision, Judge Breitel-recognized that arbitrational procedures “ compelled by government, must accord with procedural and substantive due process.” (P, 500; emphasis supplied.)
The arbitrational processes we now judge cannot easily be classified as either consensual arbitration or compulsory arbitration. However tempting it may be to characterize the present contract (art. 33) as consensual, it is an historical fact that it springs from the compulsive conception of the Taylor Law and its necessary recognition of public employee bargaining agencies in exchange for the public employees’ forfeiture of the right to strike.
Should the agreement here in question be viewed as a contract, voluntarily and consensually entered into by the plaintiff employee, specifically waiving his statutorial and constitutional rights and calling for arbitration of charges similar to those under consideration in these proceedings, then this court would have little difficulty in disposing of the “State’s action ”. (See c. State Action, supra.) Concededly, the court would then be much less sensitive to the constitutional rights denied to the plaintiff.
However, such is not the case here. The power of the OSEA to bargain on behalf of State employees is almost singular and total.[8] Such authority is derived from the recognition of the OSEA by the State. The power of the OSEA, thus exercised in the present agreement with the support and authority of the Legislature, leaves this agreement far short of the well-known and long-established consensual arbitration procedures familiar to the sphere of private employment.
Under the circumstances here, the ultimate criterion for the present arbitrational procedures must comport with the standard articulated by Judge Breitel in Mount St. Mary’s Hosp. v. Catherwood (26 N Y 2d 493, 508, supra): “ the device for arbitration is a substitute for a determination of the dispute by an administrative or regulatory agency. As a substitute device, *21 however, its objective may not be accomplished under lower constitutional standards than would be required of an administrative or regulatory agency.”
There is no proof here that the agreement was even ratified by the public employees now affected. Indeed, the Taylor Law does not require that collective bargaining agreements be ratified by the public employees represented. (Matter of Wald v. Nassau Chapter Civ. Serv. Employees Assn., 72 Misc 2d 723.) Such ratification alone, however, would not (without requisite specificity) constitute a waiver on the part of a public employee of his constitutional and statutory rights, otherwise available to him under the .Civil Service Law (§§ 75, 76). In a very similar situation, the Second Department recently stated: “ Something more of an affirmative action by the complainants [public employees] indicating approval of the contract and acceptance of its terms in substitution of their statutory rights must be shown before waiver and estoppel can be fairly concluded to have arisen. Here the most that can be said, of the complainants prior to the filing of their grievances is that they did nothing to repudiate the contract. That hardly constitutes the kind of conduct out of which waiver and estoppel commonly are found.” (Matter of Union Free School Dist. v. New York State Division of Human Rights, 43 AD 2d 31, 36.)
In sum, in the absence of a knowing and affirmative waiver on the part of a public employee governed by the present agreement, the employee shall not be bound by the provisions of article 33 entitled “ Resignation and Discipline ”. Rather, the provisions of sections 75' and 76 of the Civil Service Law remain open and available to him.
H. SUMMARY.
This court concludes: (1) That the statute (L. 1972, eh. 283, § 1) has permitted the establishment of a constitutionally impermissible agreement. (2) That the agreement denies the employee due process. (3) That the agreement denies the employee equal protection of the laws. (4) That the employee has not waived his. constitutional or statutory rights.
For the foregoing reasons the defendant State’s motion for summary judgment is denied in all respects. The plaintiff employee .shall have summary judgment upon his action for declaratory judgment to the extent that he may choose such procedures as he shall deem appropriate for the hearing, disposition and appeal, if any, of the charges, brought against him, either in accordance with sections 75 and 76 of the Civil Service *22 Law or, in accord with article 33 of the employment agreement dated June 20,1973.

. However, some administrative determinations still found their way into the courts where aggrieved employees alleged an “ arbitrary ” basis for the commission’s decision. (See Matter of Borborito v. Moses, 31 A D 2d 898; Matter of Santella v. Hoberman, 29 A D 2d 655; Matter of Taylor v. New York City Tr. Auth., 25 A D 2d 682; Matter of Trotman v. Hoberman, 56 Misc 2d 915.)

. The penalty imposed, however, could still be challenged by the alternate methods of review found in section 76. (Agreement, art. 30,2 B [1972].)

. The authority for the limited CPLR article 75 review arises from the somewhat tenuous reference, found in article 33.4 h of the labor agreement to article 34.2 d 1 D of such agreement entitled “ Grievance and Arbitration

. CPLR 7506 (subd. [e]) entitled “ Hearing ”, provides: “ Evidence. The parties are entitled to be heard, to present evidence and to cross-examine witnesses.”

. See Egan Real Estate v. McGraw, 40 A D 2d 299; Brenerton Corp. v. United States Corp. Co., 34 A D 2d 1.

. Not raised in the plaintiff’s proceedings is the question concerning the suspension of the plaintiff, without pay, prior to any administrative hearing. See the recent decisions of the Appellate Division, Fourth Department in Matter of Jerry v. Board of Educ. of City School Dist. of City of Syracuse, and Matter of Soda v. Christner (44 A D 2d,198).

. Cf. Pictorieil Review Co. v. Helvering (68 F. 2d 766).

. See Goffen, Exclusivity of Majority Civil Services Unions under the Taylor Law, IT. T. State Bar J., Jan., 1974; p. 39.